■ In the Matter of the Estate of Adele K. Willoughby, Deceased. Irwin N. Wilpon, Guardian ad Litem, Appellant; Charles H. Kauffman, Jr., as Successor Trustee, et al., Respondents.—In a proceeding (1) to settle a final account on behalf of the deceased trustee of a testamentary trust and (2) to construe the will, the appeal is from so much of a decree of the Surrogate's Court, Kings County, dated May 27, 1975, as adjudged that after the death of Mrs. Virginia K. Grunhof, Jr., the income of 20% of the trust payable to her shall be paid to the surviving income beneficiaries. Decree reversed insofar as appealed from, on the law, without costs, and it is adjudged that the income of 20% of the trust payable to Virginia K. Grunhof during her lifetime shall, from and after her death, be paid to Marjorie Willoughby, Fuller Dickson Willoughby, Jeanine Wayne Willoughby and Michael Gerard Willoughby, as remaindermen of the trust, so that all said income of 20% of the trust accumulated since the death of Virginia K. Grunhof and all said income of 20% of the trust shall be paid one-third each to Marjorie Willoughby and Fuller Dickson Willoughby and one-sixth each to the infants Jeanine Wayne Willoughby and Michael Gerard Willoughby. There is no direction in the will for payment over, or accumulation, of the income which the deceased income beneficiary, Virginia K. Grunhof, would have been entitled to receive up to the date of the expiration of the trust. That income, by statutory mandate (EPTL 9-2.3), passes to the persons presumptively entitled to the next eventual estate

*(Matter of Pomeroy,* 74 Misc 2d 953, 957; *Matter of Shupack,* 158 Misc 873). Said persons are the remaindermen living at the time of the death of this income beneficiary, Virginia K. Grunhof. Gulotta, P. J., Rabin, Martuscello and Latham, JJ., concur; Shapiro, J., dissents and votes to affirm the decree insofar as appealed from, with the following memorandum: For the reasons hereafter stated, I agree with the disposition made by Surrogate Sobel and I therefore vote to affirm the decree insofar as appealed from.

### PRIOR PROCEEDINGS AND THE FACTS

Adele K. Willoughby, the testatrix, died in Florida on June 13, 1968. A major asset of the estate consisted of a one-sixth interest in real property in Brooklyn, New York. Surrogate Sobel found that this had passed to the testatrix from her husband, Hugh Willoughby, Jr., at his death and that another one-sixth interest had passed to her husband's son Hugh Willoughby, III. Other than a small bequest to a person who was employed in the household of her husband and herself, the testatrix, by her will, left all of her property in Connecticut to her sister, Virginia K. Grunhof, and in paragraph Fifth thereof the testatrix gave her one-sixth interest in the Brooklyn real property to Mrs. Grunhof in trust to "collect my portion of the income from said property for a period of ten years" and further directed that Mrs. Grunhof, as trustee, "after deducting her reasonable charges and expenses in connection with this trust, shall distribute the balance of such funds in the following manner:" 20% to herself, Mrs. Grunhof; 10% to each of two nieces; 10% to a nephew; 10% to Fuller Dickson Willoughby, a son of her stepson; and the remainder in equal shares to four charitable institutions. It was also provided in the same paragraph that at the expiration of the 10-year life of the trust, "the corpus * * * shall be distributed to Hugh L. Willoughby, III, or his heirs." Letters of trusteeship were issued to Mrs. Grunhof on May 15, 1969. On July 2, 1973 she died. On March 1, 1974 letters of trusteeship were granted to petitioner, Charles H. Kauffman, Jr., as the successor trustee. He is a nephew of the testatrix, a 10% beneficiary of the trust and a residuary legatee under the will. He initiated the instant proceeding as executor of the estate of Mrs. Grunhof and as such successor trustee. The construction he sought was on the question as stated by the Surrogate: "Who is to receive the 20 percent of the income which had been paid to Virginia for the balance of the term of the trust?"[*] The issue posed on this appeal flows from the positions taken by petitioner and appellant, the guardian ad litem of the infant heirs who would take as remaindermen after the expiration of the trust (their grandfather, Hugh Willoughby, III, died on May 7, 1973 and their father, Hugh Willoughby, IV, predeceased him). Petitioner contends that in this 10-year split income trust the testatrix's intent, as determined from the provisions of the will, was that the deceased trustee's share of the income was to be shared by the remaining income beneficiaries and that, therefore, the mandate of EPTL 9-2.3, that "When income is not disposed of and no valid direction is given for its accumulation it passes to the persons presumptively entitled to the next eventual estate", is not applicable. Appellant contends that since the will contains no explicit provision concerning the distribution of trust income which lapses because of the death of an individual beneficiary thereof prior to the end of the trust, section 9-2.3

---

[*] The Attorney-General of the State of New York also appears as a respondent on this appeal, representing the four charities entitled to a share of the trust income under paragraph Fifth of the will.

applies and his wards are entitled to receive their share of the undistributed income which would have been paid to Mrs. Grunhof. The issue, therefore, is whether, in fact, there is no disposition in the will of 20% of the income payable to Mrs. Grunhof so as to bring EPTL 9-2.3 into operation.

### THE PROVISIONS OF THE WILL

The individual beneficiaries of the income trust here under consideration are, first, the testatrix' sister Mrs. Grunhof who, in addition to receiving the largest share, 20%, as contrasted with 10% for each of the other individual beneficiaries and each of the charitable beneficiaries, also received all of the testatrix' estate within the State of Connecticut and was named trustee of the trust and an executor; second, the testatrix' two nieces and her nephew; and third, Fuller Dickson Willoughby, a surviving son of Hugh Willoughby, III, the testatrix' stepson. All but Fuller Dickson Willoughby are blood relatives of the testatrix. *There is a complete omission of any allocation of income to the stepson or the stepson's other son or that son's children.* Furthermore, paragraph Fifth, which sets up the income trust, directs the trustee to "collect my portion of the income from said property *for a period of ten years"* and also states: *"After such period of ten years* the corpus of said trust shall be distributed to HUGH L. WILLOUGHBY, III, or his heirs" (emphasis supplied).

### THE LAW

We are faced here with a need to determine whether the failure of the testatrix to explicitly provide how the income share of any of the individual beneficiaries of the income trust she set up for the fixed term of 10 years who might die before the date the trust was to end was to be disposed of requires application of the rule of construction embodied in EPTL 9-2.3. It is hornbook law that the intention of the testator is the most respected of all canons of construction. Thus, in *Matter of Thall* (18 NY2d 186, 192) Judge Fuld said: "The first rule of testamentary construction, of course, is that a will be interpreted to reflect the actual intention of the testator and the second that this intention be ascertained from a reading of the document as a whole. (See, e.g., *Matter of Dammann,* 12 NY2d 500, 504–505; *Matter of Larkin,* 9 NY2d 88, 91; Matter of Fabbri, 2 NY2d 236, 240; *Williams v Jones,* 166 NY 522, 532–533.) If a 'general scheme' be found, it is the duty of the courts to carry out the testator's purpose, notwithstanding that 'general rules of interpretation' might point to a different result. *(Williams v Jones,* 166 NY 522, 533, *supra.)* Corollary to these broad principles is the doctrine that a court may 'give effect to an intention or purpose, indicated *by implication,* where the express language of the entire will manifests such an intention or purpose' and the testator has simply neglected to provide for the exact contingency which occurred" (emphasis added by Fuld, J.). In *Matter of Dammann* (12 NY2d 500, 504–505) Chief Judge Desmond said: "The first, safest and most urgent rule of testamentary construction is the one that says that whenever possible the testament is to be construed in accord with the actual intent of the testator including his presumed intent to dispose of his whole estate by the will *(Schult v Moll,* 132 NY 122, 125, 127; *Meeks v Meeks,* 161 NY 66, 70–71; *Hadcox v Cody,* 213 NY 570, 573, 574; *Cammann v Bailey,* 210 NY 19, 30; *Matter of Warren,* 11 NY2d 463)." In *Matter of Fabbri* (2 NY2d 236, 239–240) the majority, speaking through Judge Burke, said: "The prime consideration here as in all will construction proceedings is the intention of the testator as expressed in the will. All rules of interpretation are subordinated to the requirement that the actual

purpose of the testator be sought and effectuated as far as is consonant with principles of law and public policy. This intent, as we have often said, must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed * * *. If the court upon reading the will in this setting discerns a dominant purpose or plan of distribution, the individual parts of the will must be read in relation to that purpose and given effect accordingly". Applying that "intention" rule here, it seems clear that the dominant purpose of the testatrix' plan of distribution was *to withhold for a period of 10 years* the passing to her stepson Hugh Willoughby, III, of her share of the Brooklyn property so that during that period the income from her one-sixth share would go to her blood relatives, namely her sister, her nieces and nephew, and to the designated charities in Florida where she died. This scheme she varied only to the extent of adding, to those thus sharing that income for 10 years, Fuller Dickson Willoughby, her stepson's son. She did not include in the small largesse (the annual income shared by the trust beneficiaries was no more than a few thousand dollars) which she gave to her blood relatives and to Fuller Dickson Willoughby either the stepson himself or any of his next-of-kin, the other potential remaindermen. That she did not intend that any of the *income of the trust* go to her stepson or any of his next-of-kin, other than Fuller, is also made clear by her reiteration in paragraph Fifth that the *trust was to last 10 years* and that only *thereafter* was the corpus to go to Hugh, III, or his heirs. This dominant purpose permeates the will even though it is not expressly set forth. As Judge Peckham said in *Schermerhorn v Cotting* (131 NY 48, 58): "It is true the will does not * * * provide for the event of the death of the son subsequent to the wife, and before he arrives at the age of thirty, intestate and without issue. I think, however, the whole scheme of the instrument shows what was the intention in such event, and that enough of such intention is stated to permit of its being carried out." Here, too, while the testatrix did not provide for the event of the death of any of the recipients of the income from the trust prior to the expiration of its 10-year term, the whole scheme of the will and the trust shows that it was her intention that the trust income should go only to the recipients named by her in the will to receive it and only the corpus was to go to her stepson or his heirs. In construing EPTL 9-2.3 we should apply the rule of statutory construction just recently stated by the Court of Appeals in *Matter of Pell v Coveney* (37 NY2d 494, 496): "It is fundamental that a statute must be read with the legislative goal in mind, so that controversies generated by ambiguities or gaps in the law may be resolved in accordance with the legislative scheme. (See 1 Kent Commentaries 462.) Courts are obligated to apply a statute to the extent possible to accomplish its purpose and to avoid incongruous, unreasonable, or unjust results. If we were to apply the statute in this case simplistically, based on a mechanical reading of language, the legislative purpose of providing a judicial remedy would be denied in precisely the kind of case where it might be most needed". It is contended that EPTL 9-2.3 is an intestacy statute which is absolute and exclusive and must be applied where a will makes no disposition of income in a contingency which has occurred. I add that the predecessor to EPTL 9-2.3, section 63 of the Real Property Law, was described by Surrogate Wingate, in a leading case on the impact of the statute, *Matter of Shupack* (158 Misc 873, 878), as a statute the words of which are, "on ordinary principles of construction and connotation, all-embracing and supply an exclusive rule of devolution in those situations contemplated by its provi-

sions". That does not mean that the statute applies in all situations where there is absent an explicit provision disposing of all income left under a trust, for, as the learned Surrogate said in the same case (p 877): "The underlying feature and motivating purpose of all such enactments is, so far as may be determinable from customary human experience, to effect a devolution of the property of a decedent who has neglected to express his intentions in such connection, to those persons whom he would presumably have desired to benefit had his wishes been made known by him." Here the testatrix made it quite clear that until the 10-year life of the trust elapsed the designated beneficiaries were to receive all the income from the corpus and that all rights of the trust remaindermen, other than Fuller Dickson Willoughby, were to be postponed until that time. If we do not so construe the will, the testatrix' purpose in creating the 10-year trust would be negated, because the remaindermen of the trust (other than Fuller) would receive some of the income from the corpus of the trust prior to the expiration of the trust term. Here, as in *Matter of Sacchi* (36 AD2d 597, 598), the procedure for which the successor trustee sought approval from the Surrogate was "the correct one in pursuance of the decedent's manifested testamentary scheme". Here, as in *Sacchi,* it appears that "the will is complete, that there is no 'income not disposed of', and that it is unnecessary to look to 'the next eventual estate' (§ 9-2.3)." The decree appealed from should therefore be affirmed insofar as appealed from.