ESTATE OF ALICE B. PENNER, DECEASED, ABRAHAM PENNER,
DAVID I. PENNER, AND DANIEL B. PENNER, EXECUTORS,
PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 5721–74.   Filed February 28, 1977.

*Irving B. Stewart,* for the petitioner.
*William K. Carr,* for the respondent.

### OPINION

GOFFE, *Judge:* The Commissioner determined a deficiency in Federal estate tax due from the Estate of Alice B. Penner, deceased, in the amount of $78,083.44. Due to concessions, the sole issue remaining for decision is whether the decedent at the date of her death possessed a general power of appointment within the meaning of section 2041[1] sufficient to cause the corpus of a testamentary trust created under the will of Mrs. Rena H. Bernheim to be includable in her gross estate. Should we decide that the decedent did possess such a power, we must also ascertain the amount subject thereto. All of the facts are stipulated and the facts and exhibits incorporated therein are so found.

At the time of filing the petition herein Abraham Penner, a resident of New York, N.Y., Daniel B. Penner, a resident of New York, N.Y., and David I. Penner, a resident of Kew Gardens, N.Y. (petitioners), were coexecutors of the Estate of Alice B. Penner, deceased. Alice B. Penner (decedent) died on September 12, 1971, a resident of New York, N.Y. The Federal estate tax return for the estate of the decedent was filed with the District Director of Internal Revenue, New York, N.Y. Letters testamentary were granted on the estate of the decedent to petitioners on October 4, 1971, by the Surrogate's Court, New York County, N.Y.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Mrs. Rena H. Bernheim, decedent's mother, died testate on January 1, 1960, a resident of the city of New York, and her will was duly admitted to probate in the Surrogate's Court, New York County. Mrs. Bernheim was survived by three children: Alice B. Penner (decedent), Frances Bernheim, and Leonard H. Bernheim. In her will, Mrs. Bernheim appointed decedent and her other two children as executors and trustees; the trustees were empowered to act by a vote of the majority.

Under the terms of Mrs. Bernheim's will the decedent was designated as the beneficiary of a trust consisting of one-third of her residuary estate.

In pertinent part, the will provided:

Eighth: A. In the event that a grandchild of mine shall become entitled to any part of the principal of my estate before attaining the age of thirty-five (35) years, such share shall indefeasibly vest in such grandchild but shall not be paid to such grandchild until such grandchild attains the age of thirty-five (35) years. My Trustees shall, until such grandchild attains the age of thirty-five (35) years, in each case set aside and hold said share for such grandchild, invest the same, collect the income, and apply the net income to the use of such grandchild except that during the minority of such grandchild my Trustees shall apply to the use of such grandchild so much only of such net income as my Trustees deem necessary for such grandchild's maintenance, support and education and my Trustees shall accumulate the balance of such net income, which accumulated income shall be paid to such grandchild when such grandchild attains the age of twenty-one (21) years.

\* \* \*

Ninth: A. During the lifetime of each child of mine I direct my Trustees to pay to, or apply to the use of, such child, out of the principal of the trust or trusts for his or her benefit created by Paragraph "Seventh" hereof, such sums not in excess of SEVEN THOUSAND FIVE HUNDRED ($7,500) DOLLARS in any one calendar year and not in excess of THIRTY-FIVE THOUSAND ($35,000) DOLLARS in the aggregate as such child from time to time may request in writing. *In addition,* if any child of mine certifies in writing to my Trustees that he or she desires to withdraw money for a *business purpose described in such writing,* then I direct my Trustees to pay to such child out of the principal of the trust or trusts for his or her benefit created by Paragraph "Seventh" hereof, such sums as such child may from time to time request in writing for such business purposes, except that the aggregate of all advances of principal made to or for the use of such child under this Paragraph "Ninth" pursuant to such child's requests shall not exceed FIFTY THOUSAND ($50,000) DOLLARS.

B. In addition, I direct my Trustees to pay to, or apply to the use of, any child of mine, out of the principal of the trust or trusts for his or her benefit created by Paragraph "Seventh" hereof, such sums as my Trustees, other

than the child involved if such child is then a Trustee hereunder, in their sole discretion may deem advisable, except that the aggregate of all advances of principal made to or for the use of such child pursuant to this discretionary power shall not exceed FORTY THOUSAND ($40,000) DOLLARS, and except further that the aggregate of all advances of principal made to or for the use of such child under this Paragraph "Ninth" shall not exceed SEVENTY-FIVE THOUSAND ($75,000) DOLLARS.

C. The decision of my Trustees in exercising their discretion under this Paragraph "Ninth" shall not be questioned and shall be binding and conclusive upon all the beneficiaries of my estate; and my Trustees shall be under no obligation to see to the further application of such payments after the same have been made by them. Furthermore, in exercising such discretion, my Trustees or Trustee may, but need not, take into account whether the beneficiary to whom, or for whose use, the payment is made or applied has other funds available for the purpose for which the payments aforesaid are made.

The Commissioner, in his statutory notice of deficiency, determined that the decedent possessed a general power of appointment within the meaning of section 2041 to appoint up to $50,000 under the terms of paragraph Ninth of Mrs. Bernheim's will. Petitioners concede the existence of such a power to the extent of $7,500.

Section 2041 requires inclusion in the gross estate the value of all property over which the decedent held a general power of appointment, created after 1942, without regard to whether that power was exercised. A general power of appointment is a power which can be exercised in favor of the decedent, his estate, his creditors, or the creditors of his estate. A power which is limited or restricted by definite guidelines does not grant the kind of power that is tantamount to ownership; therefore, section 2041(b)(1)(A) and the regulations promulgated thereunder provide that a power limited by an ascertainable standard reasonably measurable in terms of the holder's needs for health, education, support, or maintenance is not a general power of appointment.

It is within the safe harbor provided by section 2041(b)(1)(A) that petitioners seek to anchor the power granted to the decedent under paragraph ninth of Mrs. Bernheim's will. Under the terms of that provision the decedent was empowered to withdraw money as she desired for a "business purpose." To ascertain whether that power was sufficiently linked to the decedent's needs for the permitted uses, we must consider the extent of her interest in light of local law.

*Morgan v. Commissioner,* 309 U.S. 78 (1940); *Strite v. McGinnes,* 330 F.2d 234 (3d Cir. 1964).

In New York, the intention of the testator is the primary consideration in the interpretation of a will. *In Re Dammann's Estate,* 240 N.Y.S. 2d 968 (1963); *In Re Larkin's Estate,* 211 N.Y.S. 2d 175 (1961). Moreover, it is the intention of the testator ascertained from a fair reading of the will as a whole that is determinative. *Matter of Estate of Willoughby,* 49 App. Div. 2d 945, 374 N.Y.S. 2d 334 (2d Dept. 1975); *In re Baylis' Will,* 78 N.Y.S. 2d 893 (Queens County Surr. Ct. 1948).

Petitioners maintain that it was Mrs. Bernheim's intention to provide a means of support for the decedent in the "unlikely and remote" event that such a need arose and that a "business purpose" as contemplated by her was narrow and limited and would arise only when it was necessary to generate business income to support the decedent.

In support of their contention petitioners argue that Mrs. Bernheim intended "business purpose" to connote the functional means of providing for the support and maintenance of the decedent and that because it was unlikely that such a need would arise the decedent was in effect given "virtually no control" over the power to invade the trust corpus.

Initially we note that the likelihood of exercise is not a relevant consideration under section 2041, rather it is the existence of a power of appointment capable of benefiting the decedent in the prescribed manner which occasions the inclusion of the value of the property subject to the power in her gross estate. *Fish v. United States,* 432 F.2d 1278 (9th Cir. 1970); *Estate of James C. Freeman,* 67 T.C. 202 (1976).

After a careful examination of the will, we are unable to conclude that the power given to the decedent was clearly limited or restricted to matters relating to the decedent's needs for maintenance and support. Respondent determined that the decedent possessed a power to invade the trust corpus to the extent of $50,000 within the meaning of section 2041(a)(2); we agree.

While we agree with petitioners' contention that the trustees were bound to satisfy themselves that a business purpose existed, we think that the construction of the phrase "business purpose" that petitioners suggest is unnecessarily

restrictive and unwarranted by a fair reading of Mrs. Bernheim's will as a whole.

The language of the grant is not couched in terms of the decedent's "need" for amounts to expend in business but rather her "desire" to do so. In contrast with paragraph Ninth B, the trustees are not required under the terms of paragraph Ninth A to exercise any discretion with respect to the decedent's power to appoint for a "business purpose." A business purpose could be viewed to permit investment in an unlimited variety of business endeavors. The language in Mrs. Bernheim's will does not guide or delimit the kind, nature, or magnitude of the possible business use to which sums could be designated by the decedent; moreover, nothing in the instrument links the use of such amounts to the decedent's needs for support. Cf. *Estate of Nathalie F. Bell*, 66 T.C. 729, 735 (1976).

Cognizant of the plethora of business directions in which sums could be expended consonant with the language of paragraph Ninth A, we are unable to conclude that the phrase "business purpose," standing alone, is clearly related to the decedent's needs for support or maintenance. We think it clear that the decedent could invade principal as she desired without regard to whether the intended use was related to the matters specified in the statute. *Estate of Effie Kells Jones*, 56 T.C. 35, 40 (1971). While the phrase "business purpose" presents a standard, it is not an ascertainable standard within the purview of section 2041(b)(1)(A).

The cases cited by petitioners simply do not support their contention. In *Strite v. McGinnes, supra,* the power to withdraw corpus was limited to occasions "necessary or advisable" to provide for "reasonable needs and proper expenses or the benefit and comfort." The Third Circuit reasoned that while the words "necessary or advisable" provided some limitation, the ability to invade for the "benefit" of the decedent was not consonant with the standard required by the statute. The language of the grant herein is broader than that in *Strite*. In *Pittsfield National Bank v. United States*, 181 F.Supp. 851 (D. Mass. 1960), the court confronted a power limited by the phrase "he to be the sole judge of his needs" and held that the power was sufficiently related to the decedent's "financial or physical need" to constitute a standard within the meaning of section

2041(b)(1)(A); we can perceive no similar limitation of the power presented herein.

In deciding, as we do, that the power granted decedent herein to appoint for a "business purpose" was not to be limited to support maintenance, education, and health as required by the statute, we are impressed by the clear language found in paragraph Eighth of Mrs. Bernheim's will. In the event that her grandchildren became entitled to any part of her estate before reaching age 35 during the minority of any particular grandchild so entitled, the trustees were required to expend net income as necessary for his "maintenance, support and education." The omission of this language regulating the use of principal by the decedent in conjunction with the use of the term "desires" is strong evidence that no similar limitation was intended to govern paragraph Ninth A.

Petitioners further contend that the amount subject to the decedent's power to invade principal for a "business purpose" was limited to $15,000. In essence, petitioners take the position that because the second sentence of paragraph Ninth A begins with the phrase "In addition," that the *amount* which could be appointed under that sentence is "in addition" to the *amount* which could be appointed under the first sentence. Because paragraph Ninth A is subject to an overall limitation of $50,000 and the first sentence is subject to a limitation of $35,000, petitioners insist that the second sentence is limited to the difference of $15,000. We are unable to agree. Indeed, we are convinced that the phrase "In addition" as used in paragraph Ninth A was merely an introductory phrase and was in no way intended to limit to $15,000 the amount subject to the decedent's power to withdraw for a "business purpose."

The second sentence provides an alternative method by which the decedent could invade the trust corpus. If petitioners' contention were correct the maximum amount which the decedent could have claimed in any one calendar year under paragraph Ninth A was $7,500 plus $15,000 or $22,500. It is clear that no such limitation was intended. A careful examination of the provision reveals that but for the "except" clause of the second sentence, the decedent could have

claimed the entire trust corpus for a "business purpose." The language of the grant is broad, stating:

I direct my trustees to pay to such child out of the principal of the trust or trust for his or her benefit created by paragraph "Seventh" hereof, *such sums as such child may from time to time request in writing for such business purpose.* * * * [Emphasis added.]

The "except" clause of the second sentence provides an overall limitation on the amount subject to the decedent's power under the whole of paragraph Ninth A. The first sentence had the effect of limiting the decedent's power under the second sentence only to the extent that amounts were appointed under that sentence and the decedent never exercised her power under the first sentence. Had she elected to appoint $7,500 under the first sentence she could have appointed an additional $42,500 under the second sentence; moreover, she could have elected to appoint the entire $50,000 under the second sentence for a "business purpose." Accordingly, we hold that the decedent possessed a general power of appointment within the meaning of section 2041(b)(1) to invade the trust corpus to the extent of $50,000; therefore, that amount is includable in the decedent's gross estate for tax purposes.

*Decision will be entered for the respondent.*