Burke, J.
The question is whether, in regard to the trust provisions of the last will and testament of John J. Larkin, the eleventh paragraph is to be construed as mere surplusage or as a substitutionary gift (to the descendants of a remainderman) conditioned upon the death of a remainderman during the enjoyment of the life estate (i.e., subsequent to the death of the testator). Stated another way—was the remainder interest of John V. Larkin indef easibly vested at the death of the testator *90 so that it would pass to his wife under his will, rather than to his descendants as a substitutional gift under the will of his father, the testator.
The Surrogate held that the remainderman’s interest was divested by his death, and his share passed, therefore, under paragraph Eleventh, to his children. The Appellate Division reversed, holding, inter alia, that the trust paragraphs were complete “ without recourse to any other part of the will ”, and that paragraph Eleventh was in effect, therefore, mere surplusage.
We agree with the Surrogate. It was the testator’s manifest intention that there should be a gift over to the descendants of the remaindermen in the event that the remaindermen were not living at the time of distribution, i.e., death of the life tenant.
Decedent, John J. Larkin, died in 1938, survived by his widow, Catherine, and three sons, John V., Sr., Leo P., and Edward F. His will provided, in pertinent part:
‘ ‘ Third : I give, devise and bequeath to my beloved wife, Catherine E. Larkin, the use and enjoyment during the term of her natural life of the residence premises whereon we reside at the time of my decease, and also of the furnishings in the residence thereon; I give, devise and bequeath said residence property and the furnishings in the residence thereon, at the death of my said wife, Catherine E. Larkin, to my three sons, Leo P. Larkin, John V. Larkin and Edward F. Larkin, share and share alike.” (Emphasis supplied.)
‘ ‘ Fourth : I give and bequeath to my trustees hereinafter named securities of the value of Twenty Thousand Dollars ($20,000.00) owned by me at the time of my death, or such sum in cash, in trust nevertheless, to hold, invest, reinvest and keep invested in such securities as to them seem most advisable, and to pay over the income therefrom, and profits thereon to my beloved wife, Catherine E. Larkin, from time to time, so long as she shall live. At her death, my said trustees shall divide the securities and balance then remaining in their hands, as trustees, in the proportion of Twelve Thousand Five Hundred Dollars ($12,500.00) to John V. Larkin and Seven Thousand and Five Hundred Dollars to Leo P. Larkin. ’ ’ (Emphasis supplied.)
*91 “ Eleventh : In the event that any of my said sons should die leaving descendants, said descendants shall take the share of any such deceased son, per stirpes and not per capita.
“ Lastly : I hereby constitute and appoint my sons, John V. Larkin and Leo P. Larkin, both of Ithaca, New York, executors of this my last Will and Testament and trustees of the trusts hereinabove set out ”. (Emphasis supplied.) Except for a $1,000 charitable bequest, the other dispositive paragraphs provided for absolute gifts to his sons.
Remainderman, John V., Sr., died in 1954, prior to the death of the life tenant, his mother, survived by his widow and three children, one of whom is represented by the special guardian-appellant here. Under the terms of his will he bequeathed his entire estate to his widow, respondent in this action.
It is very significant that paragraphs Third and Fourth, when considered together with paragraph Eleventh as they should be, cannot be construed as using words of an absolute gift in regard to the remaindermen. The interests in the estates thus created could only be conveyed conditionally, namely, subject to divestment should the sons predecease their mother.
The Appellate Division’s interpretation is at variance with the authorities. It is fundamental that “ [w]ords are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant.” (Matter of Buechner, 226 N. Y. 440, 443.) Equally basic is that the prime consideration of all construction proceedings is the intention of the testator as expressed in the will. All canons of construction are subordinate to this consideration. If the testator’s intention is not clear then it “ must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed.” (Matter of Fabbri, 2 N Y 2d 236, 240, emphasis supplied; Matter of Gautier, 3 N Y 2d 502, 509.) If a reading of the entire will reveals a “ dominant purpose or plan of distribution ”, the individual parts must be interpreted in the light of that purpose, and be given effect accordingly, despite the fact that a literal reading might yield an inconsistent meaning because of the language or format employed. (Matter of Fabbri, supra, *92 p. 240; Roe v. Vingut, 117 N. Y. 204, 212; Haug v. Schumacher, 166 N. Y. 506; Williams v. Jones, 166 N. Y. 522, 533.)
In onr opinion, a reading of this will indicates that testator intended that the bulk of his estate be distributed to, and enjoyed by, his direct descendants, and provided, therefore, substitute lineal beneficiaries in the event that his sons did not survive at the time of distribution, whenever that may be. For example, if paragraph Eleventh, which immediately precedes the clause containing the designation of the trustees, is read in conjunction with the absolute bequests of the other paragraphs, it would naturally mean at the time of death of the testator. "Whereas, when read in regard to the trust provisions, it means at the death of the life tenant.
This is not, as the Appellate Division concluded, ascribing two meanings to the same language. It is a construction which attributes significance to the words employed, and is consistent in its application to all bequests, be they absolute or in trust (see Matter of Buechner, supra), as well as consonant with the canons of construction, with which we will now deal.
It has been stated that, apart from the rule as to intention which is of paramount importance, heirs of the blood should be preferred to strangers (Matter of Robinson, 155 Misc. 412, 415; see, also, Matter of Englis, 2 N Y 2d 395, 401); and this presumption prevails in favor of descendants as against collaterals (see Matter of Englis, supra, p. 401; March v. March, 186 N. Y. 99; 7 Warren’s Heaton, Surrogates’ Courts, ch. VI, Construction of Wills, § 21, p. 171). In the March case, one of the testator’s sons died subsequent to the testator, but prior to distribution. The court held that his share was divested by his death and was payable, therefore, to his child (descendant) rather than to his devisee or legatee.
Secondly, it is quite correct that ordinarily, where there is a devise or bequest to one person and in case of his death to another, it is to be construed as referring to death in the lifetime of the testator. However, the Appellate Division did not go far enough. £ ‘ There is * * * a qualification, or, more properly speaking, an addition to this rule which is equally well established, and this seems to have been overlooked by the learned [court below] ” (Lyons v. Ostrander, 167 N. Y. 135, 138, emphasis and brackets supplied; Matter of Farmers’ Loan & Trust *93 Co., 189 N. Y. 202, 207; McLean v. McLean, 207 N. Y. 365, 376; 7 Warren’s Heaton, Surrogates’ Courts, § 78, par. 4, p. 526). “ As eases very like the present demonstrate, absent language pointing a contrary intention, words of survivorship refer to the time of the testator’s death ‘ only in the case of an absolute devise or bequest to one and in case of his death .to another ’; they carry no such implication where, as in the will under consideration, the first devisee or legatee takes a life estate. (Mullarky v. Sullivan, 136 N. Y. 227, 231; see, also, Matter of Parsons, 242 N. Y. 246, 250; Matter of Buechner, 226 N. Y. 440; Matter of Palis, 220 N. Y. 196, 204; Lyons v. Ostrander, 167 N. Y. 135, 140; Restatement, Property, § 251, p. 1266.) ” (Matter of Gautier, 3 N Y 2d 502, 508, supra.)
In this light it can be seen that the presumptions and rules of construction fortify the Surrogate’s ruling that the testator intended to benefit his descendants at the time of distribution.
It seems that the Appellate Division felt its decision was required because, inter alia, of the “ familiar canon of construction in favor of vesting ’ ’. Although we agree that the canon may be applied in case of doubt (Walsh, Law of Property, § 246, Rules of Construction, et seq.; however, see § 253), it makes no difference in this situation. No such construction mandates that the property be indefeasibly or absolutely vested. The cases are numerous wherein the courts have held that the “ language, such as that used by the testator here, or language substantially identical, creates a vested remainder in fee subject to be divested by the remainderman’s failing to survive the life beneficiary ” if the remainderman leaves descendants surviving (emphasis supplied; Matter of Krooss, 302 N. Y. 424, 429, and cases cited therein). In the latter event the children take by substitution (Lyons v. Ostrander, supra; Matter of Bigelow, 285 App. Div. 1072). Since the remainderman here failed to survive the life tenant, his “ descendants [should] take the share * * * per stirpes ”.
Accordingly, the order of the Appellate Division should be reversed, ánd the decree of the Surrogate’s Court reinstated, with costs to both parties payable out of the estate.
Chief Judge Desmond and Judges Dye, Fuld, Feoessel, Van Voorhis and Foster concur.
Order reversed, etc.