Nathan R. Sobel, S.
Incidental to its account, the trustee, Republic National Bank, requests construction of article third of David L. Tilly’s will.
Mr. Tilly died in 1949 leaving a will which he had executed in 1919, some 30 years before his death, and which was duly admitted to probate.
In article third, the will created a trust for the life income benefit of testator’s wife Gertrude. Upon her death, the princi *905 pal was to be paid to son Willard and if he should predecease, to his issue. In fact Willard predeceased the testator, himself, as well as his mother, the income beneficiary, without issue. In that contingency, the will directed the trustee "to pay over, transfer and deliver the principal of the trust fund to and among my next of kin in equal shares but per stirpes and not per capita. ”
The direction is clearly to distribute the principal among testator’s next of kin. The issue is — "as of what date are the next of kin to be determined: (1) 1919 the date of execution of the will; (2) 1949 the date of testator’s death, or (3) 1975 the date of death of the income beneficiary, testator’s wife Gertrude?”.
I
In 1919, the date of execution of the will, testator’s sole "next of kin” was his son Willard.
A brother Arthur and a sister Edith, then living were not next of kin while son Willard was living (Decedent Estate Law, § 98, subd 4).
In 1919, a surviving spouse was not "next of kin”. (Murdock v Ward, 67 NY 387; Tillman v Davis, 95 NY 17; Platt v Mickle, 137 NY 106.) From 1930 to 1938 there is a gray area made such by the decision in Matter of Waring, 275 NY 6). Noting that Waring may have been wrongly decided, the Legislature upon recommendation of the Foley Commission enacted Decedent Estate Law, § 7-c (L 1938, ch 181, eff Mar. 28, 1938. Section 47-c, (like present EPTL 2-1.1) provided, that unless a contrary intent is expressed in a will, the term "next of kin” (also "heirs” and "heirs at law”) shall include all distributees entitled to take in intestacy under the statute of descent and distribution. Section 47-c expressly included "a surviving spouse”. (Matter of Koch, 282 NY 462.)
II
In 1949, the date of testator’s death, son Willard was already dead. Testator’s "next of kin” included his widow Gertrude by express provision of then effective section 47-c. It also included brother Arthur and sister Edith, then living, since under the statute of descent and distribution then in effect, they shared with the surviving spouse when there were no issue surviving. (Decedent Estate Law, § 83, subd 4.)
*906 Generally a will speaks as of the date of death of testator. This is especially true when terms used in the will (e.g. "next of kin”) are referrable to the statute of descent and distribution which testator is presumed to know may be changed by the Legislature at any time. (Matter of Lewin, 51 Misc 2d 141, affd 27 AD2d 971, lv to app den 20 NY2d 644, and cases cited.) Thus, as next discussed, unless testator intended that his "next of kin” be determined at the time of the death of the income beneficiary, testator’s next of kin at the date of his death were his wife Gertrude, his brother Arthur and his sister Edith.
The fact that the life income beneficiary, as next of kin, is also a remainderman and that she can never come into possession of her remainder interest is a factor to be considered but standing alone does not preclude the determination that her remainder interest became vested in 1949 at the death of the testator. (Matter of Chalmers, 264 NY 239, 247; Matter of White, 213 App Div 82, 85.)
Ill
If testator intended "futurity” — that his next of kin should be determined as of the date of death of the life income beneficiary (1975) then intestacy will result. None of his next of kin survived the income beneficiary. Sister Edith died in 1971 without issue. Brother Arthur died in 1974 without issue. Wife Gertrude died in 1975 without issue. This is the construction requested by the Attorney-General appearing on behalf of the State Comptroller with whom the principal of the trust must then be deposited (SCPA 2222).
We examine again the relevant provisions of the will to determine testator’s intent "in the event that at the death of my said wife my said son Willard shall be dead leaving no issue him surviving, then to pay over, transfer and deliver the principal of the trust fund to and among my next of kin, in equal shares but per stirpes and not per capita. ”
We find in the language used no expressed intention by testator that his next of kin were required to survive the income beneficiary. (Cf. Matter of Van Cleaf, 36 NY2d 975; Matter of Gulbenkian, 9 NY2d 88; Matter of Larkin, 9 NY2d 88; Matter of Gautier, 3 NY2d 502.)
The phrase "at the death of my said wife” and the word "then” (also "when”, "after”, "from”) preceding the disposi *907 tion of a remainder limited upon a preceding life income interest, merely indicates the time when possession is to begin; such phrases or words do not impose a condition of survival nor prevent earlier vesting. (Connelly v O’Brien, 166 NY 406; Roosa v Harrington, 171 NY 341; Matter of U.S. Trust Co. [Hoyt], 179 App Div 923, affd 223 NY 617; see, also, 2 David’s New York Law of Wills, § 955, pp 1512-1513.)
In the absence of an expressed condition of survival, we examine the constructional preferences. It is when intention is not readily ascertainable or where testator had no intention at all (which is very likely in this case) that resort is had to constructional preferences. These are not rules of substantive law but merely rules of construction useful in determining what the ordinary testator would have intended if indeed he had given any thought to the disposition under construction.
We consider three such rules of construction applicable generally, but as well in this case to determine this testator’s preference.
1. One such rule is discussed and explained by this Court in Matter of Bogart (62 Misc 2d 114, 119). It is only briefly mentioned here.
(a) When the remaindermen are named individuals (as distinguished from a class) there exists a strong presumption in favor of vesting and against a condition of survival. Obviously testator expected that his named remainderman would survive to take possession. If a remainderman had survived he could have disposed of his remainder interest as he saw fit. For such reason it is presumed that testator would have no objection to allowing the remainder interest to pass to the named remainderman’s estate to be disposed of as directed in that remainderman’s will or as in intestacy. This is the same reasoning which justifies our anti-lapse statutes.
(b) When the remaindermen are a horizontal class (of equal degree of consanguinity) such as "children”, or "grandchildren”, or "brothers and sisters”, the same rule and reasoning is applied. There is a presumption in favor of vesting and against a condition of survival.
(c) When the remaindermen are a vertical class (more than one generation) such as "issue” or "heirs” or "next of kin”, the presumption is against vesting and in favor of a condition of survival. Testator by using a term which includes more than one generation has indicated that his intention has extended beyond a single generation. Thus the use of the term *908 "next of kin” imports futurity and an intention that the remaindermen so designated are required to survive the life income beneficiary. The reason: the consequences of dropping out a predeceased member of the class is not drastic particularly where such predeceased member leaves issue or where other members of the class survive to receive possession. (Restatement, Property, § 249; 2 Powell, Real Property, par 327; Simes and Smith, the Law of Future Interests, §§ 146, 579.)
2. Closely related to the above, is the situation where a holding that a remainderman was not required to survive, would vest the remainder in the life income beneficiary who would never take possession. Of course if the life beneficiary is himself the ancestor whose horizontal or vertical class of relatives are the remaindermen, the presumption follows the rules set forth in 1(b) and 1(c) above. However, when the testator himself is the ancestor whose class of remaindermen include the life beneficiary, as in the instant case, it is generally presumed that he intended to exclude the income beneficiary from the class and that, therefore, survivorship was intended.
3. The third rule, the constructional preference against intestacy — more properly labeled the natural preference for complete disposition — stands on the firmest ground of all. Presumably no testator, who takes the trouble to make a will ever intends that his property shall pass in intestacy. Of course, when after exhausting all substitutionary dispositions (as decedent did by designating his son and his son’s issue as remaindermen) he directs disposition of the remainder interest to his next of kin (a vertical class) he is in effect directing that the remainder interest pass (as a final alternative) as if he had died intestate. But his intention extends only so far as to vest the remainder in such next of kin who in fact survive the income beneficiary.
But not the average testator, nor indeed any testator, ever intends that his property shall pass to the State Comptroller. Nor did Mr. Tilly.
Therefore, the will is construed as vesting the remainder interest in his next of kin living at his death but subject to be divested if and only if any of his next of kin survive the life income beneficiary. Since none did survive the trustee is required to pay the principal of the trust equally to the *909 estates of wife Gertrude, brother Arthur and sister Edith as set forth in the petition.
If indeed it is testator’s intention which we seek from the direction under consideration and if he were available to express such intention, it is certain that (over the result of deposit with the Comptroller) he would prefer that the principal of the trust be disposed of in accordance with the finding of this court. The court therefore finds that this was his actual intention. The will is so construed.