In the Matter of the Estate of CARL SPRINCHORN, Deceased. KATHRYN FREEMAN et al., as Executors of CARL SPRINCHORN, Deceased, Petitioners; RAYMOND AGUDO, Appellant, and DONALD W. BOYAJIAN, as Guardian ad Litem of Unknown Heirs of CARL SPRINCHORN, Deceased, Respondent.

Third Department, October 19, 1989

APPEARANCES OF COUNSEL

*Fritts & Whiting (Samuel Whiting* and *Michael J. Griffin* of counsel), for appellant.

*Donald W. Boyajian,* respondent *pro se.*

## OPINION OF THE COURT

MERCURE, J.

The essential facts are not in dispute. Carl Sprinchorn (hereinafter decedent) came to this country from his native Sweden in the early 1900's, became a citizen of the United States and resided in the Albany County community of Selkirk. He died in 1971, survived by a sister, Anna Johnson, also of Selkirk, and the five children of his deceased brother, Adolph Sprinchorn, all residents of Sweden. Under the terms of decedent's last will, executed in 1969, the residuary estate was placed in trust, with income to decedent's friend, Kathryn Freeman, during her lifetime and, upon her death, to Johnson, if she survived Freeman. Upon the death of the survivor of Freeman and Johnson, the trust was to be terminated and the principal paid over to Johnson's daughter, Ruth Olson, and Olson's daughter, Anita Agudo (hereinafter Agudo), in equal shares, "if they shall both then be living, or, if only one shall then be living, in its entirety to the one then living". When the will was executed, the life beneficiaries, Freeman and Johnson, were 71 and 92 years old, respectively, while the remaindermen, Olson and Agudo, were aged 62 and 40. Johnson died in 1973 and Olson died in 1977. Agudo, Olson's sole distributee, died in 1981, survived by her husband, respondent Raymond Agudo, as the sole residuary beneficiary of her will. Freeman died in 1984.

Since the will fails to provide for disposition of the trust corpus if, as happened, both remaindermen predecease the surviving income beneficiary, a construction is necessary. The specific question for the court is whether the remainder interests were indefeasibly vested, in which case the entire remainder would pass to Agudo's personal representative, or vested subject to divestment in the event of the death of both remaindermen prior to the surviving life beneficiary, in which case, under the rules of intestacy, one half of the remainder would pass to the surviving children of decedent's brother and the other half to Raymond Agudo. Surrogate's Court determined that the failure of Olson and Agudo to survive Freeman caused divestment of the remainder interests and, thus,

partial intestacy. Raymond Agudo now appeals. For the reasons that follow, we reach a different conclusion.

"The first rule of testamentary construction, of course, is that a will be interpreted to reflect the actual intention of the testator and the second that this intention be ascertained from a reading of the document as a whole" *(Matter of Thall,* 18 NY2d 186, 192). If, upon reading the will, it reveals a " 'dominant purpose or plan of distribution' ", the individual parts must be interpreted in light of that plan of distribution *(Matter of Larkin,* 9 NY2d 88, 91, quoting *Matter of Fabbri,* 2 NY2d 236, 240). Here, upon consideration of the entire will, decedent's intent is plain. His general scheme was to principally benefit his sister's American family and to merely bestow gifts of acknowledgment upon his deceased brother's Swedish family. His will, in paragraph FOURTH, indicates a predisposition favoring his niece, Olson, as he left her a bank account of some $23,000 and stock valued in excess of $4,000. He then gave his grandniece, Agudo, a monetary gift which equalled or exceeded the gifts to his brother's children. These facts, coupled with the disposition of remainder interests in the residuary estate to Olson and Agudo, manifest decedent's paramount concern for his niece and her daughter. It is evident that decedent expected that Olson and Agudo would survive both Freeman and Johnson. His failure to foresee what actually came to pass, the death of Olson at age 70 and Agudo at age 52, prior to the death of Freeman, the substantially older income beneficiary, at age 86, should not work to destroy his general testamentary scheme *(see, Matter of Thall, supra,* at 192-193).

Moreover, although resort to other rules of construction is unnecessary where the language of the will clearly expresses the testator's purpose *(see, supra,* at 192), it is noted that well-established constructional preferences also support the conclusion that the remainder interests were indefeasibly vested. This interpretation of decedent's will is supported by the preference for early indefeasible vesting of future estates *(see, Matter of Lockwood,* 127 AD2d 973, 974), especially where, as here, the disposition is of a remainder to a named individual *(see, Matter of Brahaney,* 117 Misc 2d 46, 53, *affd* 103 AD2d 1002), creating a strong presumption, " 'almost irrebuttable' ", against the imputation of a condition of survival *(see, supra,* at 53). Further support is provided by the rule of construction disfavoring complete or partial intestacy *(Matter of Fabbri, supra,* at 243).

Quite dissimilar are *Matter of Larkin (supra)* and *Matter of Gulbenkian* (9 NY2d 363), relied upon by the guardian ad litem. In both cases, the testator employed words of substitution in creating the remainder interests and, thus, manifested an intention that the remaindermen be required to survive the life beneficiaries. In *Larkin,* the Court of Appeals construed a will in which the testator made a disposition of the remainder of a trust to his two sons and thereafter provided "[i]n the event that any of my said sons should die leaving descendents, said descendants shall take the share of any such deceased son" *(Matter of Larkin, supra,* at 91). The court held that the quoted language showed the testator's intent that there be a gift over to the descendants in the event the remaindermen did not survive the life beneficiary *(supra)*. Similarly, in *Gulbenkian,* the testator created a lifetime trust to his wife followed by a remainder " 'to my brothers * * * in equal shares *and their several descendants per stirpes' " (Matter of Gulbenkian, supra,* at 368 [emphasis supplied in original]). The Court of Appeals held that the making of a substitutionary gift showed the testator's intent that the gift be conditional *(supra,* at 370). Here, decedent ended the paragraph creating the Olson and Agudo remainders without any further gift or limitation over to any substitutionary beneficiary, exactly what the court in *Gulbenkian* said would have evidenced an indefeasibly vested remainder *(supra; see, Matter of Walker,* 85 Misc 2d 110, 113; *see also, Matter of Lockwood, supra,* at 974).

KANE, J. P., CASEY, MIKOLL and YESAWICH, JR., JJ., concur.

Decree modified, on the law, without costs, by reversing so much thereof as construed paragraph ELEVENTH of decedent's will as creating a vested remainder subject to divestment in the event that both remaindermen fail to survive the surviving life beneficiary; paragraph ELEVENTH is construed to create an indefeasibly vested remainder in Ruth Olson and Anita Agudo; and, as so modified, affirmed.