■ In the Matter of the Estate of FRED FEUER, Deceased. BETTY SEALOVE et al., Respondents; RANDY A. KAUFMAN et al., Appellants. [622 NYS2d 619] —Cardona, P. J. Appeal from a decree of the Surrogate's Court of Schenectady County (Mazzone, S.), entered December 30, 1993, which construed paragraphs five and six of decedent's last will and testament.

Decedent, Fred Feuer, died March 7, 1992 at 80 years of age following a protracted illness. He was survived by his wife of nearly 34 years, Frances Feuer (hereinafter Feuer). The couple had no children. Decedent left a will dated May 23, 1969 which nominated Feuer as executrix. Decedent's will was

admitted to probate on April 7, 1992 and Feuer was appointed executrix. In paragraph two and three, decedent's will made specific bequests of $25,000 to his sister, petitioner Betty Sealove, and $50,000 in a testamentary trust to benefit his father, Jacob Feuer. Jacob Feuer predeceased decedent. Paragraphs five and six contain the residuary and alternate residuary clauses which are central to this will construction proceeding.

Paragraph five provides: "All the rest, residue and remainder of my estate, of every sort, nature and kind, real, personal or otherwise, and wheresoever situate, of which I die seized or possessed, or over which I have any power of disposition by Will, I give, devise and bequeath to my wife, FRANCES FEUER, to be hers absolutely and forever."

Paragraph six provides in pertinent part: "In the event my wife should predecease me, or in the event my wife and I shall die by reason of common accident, illness, epidemic, catastrophe, or otherwise simultaneously or within a short time of each other, or before my said spouse has had the beneficial use of my estate, I then give, devise and bequeath my entire estate as follows". The sixth paragraph lists two cousins who receive $5,000 each, five charities which receive $1,000 each and the remaining residuary is divided between decedent's family and Feuer's family as follows: 40% to Sealove, 20% to decedent's niece, petitioner Sandra Jenkins, 20% to Feuer's nephew, respondent Peter A. Kaufman, and 20% to Feuer's niece, respondent Randy A. Kaufman.

Feuer died on June 25, 1992, 110 days after decedent. She left a will dated June 13, 1992 which has also been admitted to probate. Feuer's will specifically bequeaths $100,000 each to her niece and nephew, Randy Kaufman and Peter Kaufman, and $1,000 each to four charities. The remainder of her estate is left in trust for the benefit of her brother, respondent Leonard Kaufman, and his wife, respondent Joy Kaufman, with the balance upon their deaths to be divided equally by their children, Randy Kaufman and Peter Kaufman. On August 20, 1992, Randy Kaufman succeeded Feuer as administratrix of decedent's estate. She is also the executrix of Feuer's estate.

In December 1992, petitioners commenced this construction proceeding claiming Feuer died within a "short time" after decedent and before having had "beneficial use" of decedent's estate within the meaning of paragraph six of decedent's will. Surrogate's Court found that Feuer never had the beneficial use of decedent's estate and therefore was divested of her

residuary legacy. Respondents appeal from the decree which distributed decedent's estate in favor of petitioners pursuant to paragraph six.

Initially, we reject petitioners' claim that Feuer's death 110 days after decedent satisfied the "within a short time" contingency of paragraph six. The phrase "within a short time" must be read as referring to a situation where Feuer and decedent died as a result of a common cause although not simultaneously, a period "measured by hours or days rather than by weeks" *(Shippee v Shippee,* 122 NJ Eq 570, 572, 195 A 728, 729). This appeal therefore distills to one issue: whether Feuer had beneficial use of decedent's estate prior to her death. Resolution of this issue turns upon the construction of "beneficial use". It is settled law that a will must be interpreted to reflect the actual intention of the testator, ascertained through a reading of the entire document *(see, Matter of Philbrook,* 207 AD2d 603, 604). "If, upon reading the will, it reveals a ' "dominant purpose or plan of distribution" ', the individual parts must be interpreted in light of that plan of distribution" *(Matter of Sprinchorn,* 151 AD2d 27, 29, quoting *Matter of Larkin,* 9 NY2d 88, 91, quoting *Matter of Fabbri,* 2 NY2d 236, 240). We find that decedent's intent to give his estate to Feuer was clearly expressed *(see, Matter of Philbrook, supra)* and that he only meant to divest her of the residuary legacy if she did not survive him long enough to acquire the right to use property in his estate. We reject, as unduly restrictive, petitioners' argument that Feuer could not have had beneficial use of assets in the estate until legal title vested in her. No language in decedent's will required her to receive distribution of the assets in order to preserve her residuary legacy. Following admission of decedent's will to probate, Feuer was entitled, upon proper application to the court, to obtain advance payments against her claimed beneficial interest *(see,* SCPA 2102 [5]; *Matter of Goldman,* 150 AD2d 267). From that point she acquired a legal, enforceable right to use assets in decedent's estate if the need arose. Decedent's intention to make Feuer the residuary legatee of his estate should not be frustrated simply because she did not exercise the right to use property in the estate prior to her death.

Casey and Peters, JJ., concur.

Mercure, J. (dissenting). We agree with Surrogate's Court that Frances Feuer (hereinafter Feuer), surviving spouse of the testator, Fred Feuer (hereinafter decedent), never obtained "the beneficial use" of decedent's estate within the meaning of

paragraph six of decedent's will and that decedent's residuary estate devolved to the alternate beneficiaries as a result. Accordingly, we would affirm.

Initially, it is our view that the majority has improperly focused on the question of whether decedent intended to benefit Feuer or, conversely, whether he intended to divest her of his residuary estate. In fact, there is no question that Feuer was the natural and actual primary object of decedent's bounty and that decedent's dominant purpose was to assure that her needs were met during the balance of her life. Because we are dealing with an alternate disposition, however, the real issue concerns decedent's secondary intent, i.e., the objects of his bounty should Feuer have no need for the assets of his estate because of the timing of her own death. Because decedent and Feuer married late in life and their marriage was childless, decedent's obvious choices in such a case were (1) to permit substantially all of his property, earned and accumulated by him during his lifetime, to pass through Feuer's estate to *her* blood relatives, the natural objects of *her* bounty, or (2) to bypass Feuer's estate and primarily benefit his own blood relatives and favored educational, religious and charitable institutions. We submit that decedent's obvious secondary intent, logically and as ascertained from the four corners of the will *(see, Matter of Cord,* 58 NY2d 539, 544), is that expressed in the second choice.

In construing the time when Feuer "has had the beneficial use of" decedent's estate as the earliest possible moment when a beneficiary could seek to compel an advance pursuant to SCPA 2102 (5), the majority has ignored both the clear language of decedent's will and established law on the subject. First, decedent's will does not speak to the time when Feuer gains the power to obtain a portion of the estate assets. Rather, the language *"has had* the beneficial use" required Feuer's actual exercise of her right to possess, control and use the assets before the residuary estate would become indefeasibly vested in her *(see, Matter of Cavanagh,* 14 AD2d 175, 177, *affd* 13 NY2d 641; *Matter of Brew,* 7 AD2d 364, 366). Second, even if an executor is entitled to bring a proceeding against herself to obtain an advance under SCPA 2102 (5), a point that need not be considered, on this record there is no means of ascertaining whether, at the time of her death, Feuer could have satisfied the statutory requirements that "the property of the estate applicable to the payment of debts, legacies and expenses exceeds by at least one-third the amount of all known claims, legacies having priority and beneficial interests

of the same class and [that she] needs such payment for [her] support or education or of [her] family" (SCPA 2102 [5]). In fact, it is clear that at the time of her death Feuer had not paid the $25,000 legacy to petitioner Betty Sealove, satisfied the claims of creditors or paid the administration expenses of the estate. It also appears that Feuer had ample liquid assets, in her own name or as decedent's surviving joint tenant, to sustain her for the short time that she lived following decedent's death.

In our view, the majority's position has the unfortunate effect of thwarting decedent's intent. Rather than interpreting the will in such a way as to defeat the alternate residuary disposition, we believe that proper recognition of decedent's testamentary scheme favors a construction that gives it maximum vitality *(see, Matter of Brew, supra).*

White, J., concurs. Ordered that the decree is reversed, on the law, with costs, petition denied and decedent's will is construed to devise the residuary estate to Frances Feuer under paragraph five thereof.