*451 OPINION OF THE COURT
Michael H. Feinberg, S.
Incidental to this proceeding to judicially settle decedent’s final account, covering the period from December 1, 1984 to July 31, 1999, is a plea for construction of paragraphs Fifth and Sixth of his will. Republic National Bank (petitioner), the successor executor and trustee under the will, maintains that construction is necessary before final distribution can be made. Petitioner, the stakeholder of testamentary trusts created under paragraphs Fifth and Sixth, takes no position with respect to the ultimate remaindermen of the trusts.
Frederick R. Cruikshank (hereafter decedent) died testate on January 18, 1944, a resident of Kings County. His last will and testament of February 27, 1942 was admitted to probate by this court on February 10, 1944. Decedent was survived by a daughter, Margaret A. Moore also known as Margaret A. Gay (hereafter Margaret), and a son, Lewis Cruikshank (hereafter Lewis), his distributees. Decedent’s wife predeceased him in 1942.
After directing the payment of debts and expenses and leaving personal effects, real property and the sum of $1,000 to Margaret, decedent’s will directed that the residue be divided into three equal shares. From these shares, the will established two testamentary trusts: one funded with two thirds of the residuary estate (the article Fifth Trust) and one funded with the remaining one third of the residuary estate (the article Sixth Trust).
With respect to the article Fifth Trust, the will named Margaret the life income beneficiary thereof and then provided as follows: “If my said daughter, Margaret A. Moore, predecease me, or if she survive me, then upon her death, I direct my trustees to divide the principal of the trust fund set up for my daughter, Margaret A. Moore, into two parts or shares.” As to the first part or share, the will further provided:
“I direct my trustees to hold one of such parts or shares in a separate trust, and to collect and pay over the net income therefrom to my granddaughter, Alline Rait Moore, until she attain the age of thirty years, at which time I direct my trustees to convey, transfer, pay over and deliver the principal of the trust fund for her benefit to my said *452 granddaughter.”[1]
As to the second part or share, the will provided:
“I direct my trustees to hold the other part or share of the trust fund set up for my daughter, Margaret A. Moore, in a separate trust, and to collect and pay over the net income therefrom to my grandson, Douglas T. Moore, until he attain the age of thirty years, at which time I direct my trustees to convey, transfer, pay over and deliver the principal of the trust fund for his benefit to my said grandson.”
With respect to the article Sixth Trust, the will named Lewis the life income beneficiary thereof and thereafter provided for a contingent disposition in favor of any children born to him. If Lewis died without issue (he did), the will provided that the net income from Lewis’s trust be paid to Margaret for life.[2] Upon Margaret’s death, the will directed as follows: “then I direct my trustees to convey, transfer, pay over and deliver the principal of the trust fund created by this Article Sixth of my will to the issue of my said daughter, Margaret A. Moore, in equal shares, per stirpes and not per capita.”
The family history includes the following pertinent facts: Margaret, decedent’s daughter and the life income beneficiary of the article Fifth Trust and the successor life income beneficiary of the article Sixth Trust (after the death of Lewis), died on October 11, 1998, outliving her two children (decedent’s grandchildren), Alline Rait Moore, also known as Alline Hutchinson (hereafter Alline), and Douglas T. Moore (hereafter Douglas). Alline attained the age of 30 years but died intestate on October 19, 1982, at age 55, domiciled in Santee, California. Alline had two children, Roy Hutchinson (hereafter Roy) and Rex Hutchinson (hereafter Rex). Roy died on January 17,1990, domiciled in Sparks, Nevada; Rex is still living. Roy was *453 survived by an infant adopted daughter, Bonnie Hutchinson, now known as Bonnie Avery (hereafter Bonnie), and his wife Jamie Hutchinson, now known as Jamie Avery (hereafter Jamie). Roy died testate but his will has not been propounded. Bonnie, who was adopted by Roy and Jamie on November 29, 1983, was subsequently adopted on August 2, 1995 by Thomas Avery (hereafter Thomas), whom Jamie married after Roy’s death.
Decedent’s grandson, Douglas, also attained the age of 30 years but died on October 2, 1996, at age 65, a resident of Los Angeles, California, predeceasing Margaret by two years. Douglas had no issue and was never married. Douglas created an inter vivos trust disposing of all his assets.
Under these facts and circumstances, petitioner poses several questions for the court’s determination: (1) Whether the shares of the remainder of the article Fifth Trust designated for Alline and Douglas vested in them at age 30, despite the fact that they both predeceased the life income beneficiary, their mother Margaret, and thus pass under the will to Alline’s and Douglas’s estates? or (2) whether there was a condition that Alline and Douglas survive Margaret in order to take, and thus their remainder interests were not vested but pass instead to Alline’s issue living at the death of Margaret? and, in such event, (3) whether Alline’s issue consist solely of her living son Rex, or also include her predeceased son Roy’s adopted daughter, Bonnie, who had been “adopted out” by her stepfather Thomas by the time of Margaret’s death? and, finally, (4) whether Bonnie shares in the remainder interest of the article Sixth Trust as issue of Margaret?
Discussion
There is no dispute among the parties about the remainder of the article Sixth Trust. Those submitting memoranda on the issue agreed, with little discussion, that Rex, as the only living issue of Margaret at the time of her death, is the sole remainderman of that trust. The court concurs. It reaches that conclusion for the following reasons.
After the deaths of both the income beneficiary and the successor income beneficiary of the article Sixth Trust, Lewis and Margaret respectively, decedent’s will directed that the principal of the trust be paid over to the issue of Margaret, in equal shares per stirpes. Thus, a definition of the term issue is necessary before a determination can be made as to the remaindermen of the trust. Unless the instrument indicates *454 otherwise (decedent’s will does not), issue are “the descendants in any degree from a common ancestor” (EPTL 1-2.10 [a] [1]). The terms “issue” and “descendants” include adopted children (EPTL 1-2.10 [a] [2]; 2-1.3 [a] [1]). However, if a child is adopted out of a family unit, the child’s rights to inherit from that family are terminated (see, Domestic Relations Law § 117 [2] [a], which codified Matter of Best, 66 NY2d 151 [1985], cert denied sub nom. McCollum v Reid, 475 US 1083 [1986]; see also, Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 1-2.10, at 27; EPTL 4-1.1, at 602-603). The few exceptions to this rule are not applicable here (see, Domestic Relations Law § 117 [2] [b] [1]).[3]
Applying the law to the facts, it becomes clear that Rex is the sole remainderman of the article Sixth Trust.
The article Fifth Trust presents an entirely different situation. In the article Sixth Trust, decedent made a class gift to issue. In the article Fifth Trust, he directed that after the death of the life income beneficiary (Margaret), the trust be divided into two shares for two grandchildren whom he named, Alline Rait Moore and Douglas T. Moore. Each grandchild should receive the trust income from his/her share until age 30, at which time the principal of the share for his/her benefit should be paid over to him/her.
Rex argues that implicit in this directive is the condition that Alline and Douglas survive Margaret in order to take as remaindermen. Because they did not, Rex opines that the remainder interests under article Fifth pass as substitutionary gifts over to the surviving issue of decedent’s grandchildren as of the date of Margaret’s death, or as failed bequests passing by intestacy. Under either theory, Rex maintains that he is the sole remainderman of the article Fifth Trust.
Interpreting the will’s provisions quite differently, Bonnie argues against a condition of survival. She contends that once Alline and Douglas attained age 30, he/she was indefensibly vested in the trust remainder subject only to Margaret’s life estate.
*455 After an independent analysis of the language of the will and the applicable law, for the reasons set forth herein the court concludes that decedent did not intend a condition of survival. Accordingly, the remainder interests of the article Fifth Trust should be paid to the respective estates of Alline and Douglas and distributed pursuant to California law where both were domiciled at death.
In the absence of words of survivorship in a will, or other evidence of intention to impose a condition of survivorship, the constructional preference for early vesting applies, particularly where the disposition is of a residue or a remainder interest. A condition of survival will not be imputed unless unequivocally expressed (see, e.g., Roosa v Harrington, 171 NY 341; Connelly v O’Brien, 166 NY 406; Matter of Bogart, 62 Misc 2d 114, 118; 13 Warren’s Heaton, Surrogates’ Courts § 201.01 [5] [a]). Moreover, where, as here, the remaindermen are named individuals as distinguished from a class, there exists a strong presumption against a condition of survival, so strong as to be almost irrebuttable in the absence of an express requirement of survival or substitution. Again, the reason for this is the uniformly recognized preference for early vesting and indefeasibility (see, e.g., Matter of Bogart, 62 Misc 2d 114, 119, supra; Matter of Vought, 57 Misc 2d 396, affd 30 AD2d 805; 13 Warren’s Heaton, Surrogates’ Courts § 201.01 [5] [b]).
It follows that when a testator makes a gift of a remainder to a named person, there is a strong inference that vesting in the named remainderman is to occur immediately, i.e., at the testator’s death (see, Matter of Ablett, 3 NY2d 261, 271; Matter of Seaman, 147 NY 69, 74; Matter of Finaly, 20 Misc 2d 320, 321), even though the time of possessory enjoyment may be postponed (see, Matter of Hurlbutt, 145 NY 535, 537, 538; Matter of Gardner, 140 NY 122, 129; Matter of Parks, 14 Misc 2d 1074; In re Blanchard’s Will, 10 NYS2d 152). Accordingly, where, as here, there is an intervening life estate, the general rule is that a gift to a named person for life, remainder to another named person, indefeasibly vests the remainder interest in the named remainderman at the testator’s death (see, Matter of Hurlbutt, 145 NY 535, supra; In re Gray’s Will, 132 NYS2d 899). Such a remainder is not divested by the remainderman’s death during the intervening life estate (see, Connelly v O’Brien, 166 NY 406, supra; Matter of Clearwater, 14 AD2d 625).
In addition, in situations where, as here, the gift of a remainder interest depends upon the remainderman’s attain *456 ing a specified age, he is not divested of the remainder after attaining the required age, even if he dies before the termination of the precedent estate (see, Matter of Ossman, 221 NY 381 [Cardozo, J.]; Fulton Trust Co. v Phillips, 218 NY 573; Matter of Bates, 189 Misc 1035, affd 272 App Div 559). An exception to this general rule occurs again only when the will uses express words of survivorship, or manifests the testator’s intent to make survivorship a condition of the gift, neither of which is manifest here.
Rex’s argument relies primarily on the oft-cited Matter of Larkin (9 NY2d 88). In Larkin, the testator left his wife a life estate in the marital residence and $20,000 in securities (or cash) in trust (para Fourth), remainder to his sons at the wife’s death. Paragraph Eleventh of the will further provided (at 91): “In the event that any of my said sons should die leaving descendants, said descendants shall take the share of any such deceased son, per stirpes and not per capita.” The final paragraph of the will named two of his sons as executors and “trustees of the trusts hereinabove set out” (id.). The Court was faced with the question of whether, in regard to the trust provisions of the will, paragraph Eleventh was to be construed as mere surplusage or as a substitutionary gift (to the descendants of a remainderman) conditioned upon the death of a remainder-man during the enjoyment of the life estate.
One of the testator’s sons predeceased the life tenant, his mother. The son was survived by his widow, to whom he bequeathed his entire estate by will, and his three children. The Court held that the testator’s manifest intention was that there should be a substitutionary gift over to the descendants of the remaindermen in the event the remaindermen were not living at the time of distribution, the death of the life tenant.
The present case is distinguishable from Larkin. Here, if decedent implies a condition of survivorship at all, it is only in a very limited context, i.e., when he makes a substitutionary gift over to the issue of Alline and Douglas but only if Alline and Douglas fail to reach the age of 30. Since both Alline and Douglas did reach 30, none of the contingent dispositions in decedent’s will ever came to fruition. To construe decedent’s will in the same manner as the will in Larkin requires treating the language regarding a failure to survive to the age 30 as excess verbiage, contrary to the fundamental rule that “[w]ords are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant” (Matter of Buechner, 226 NY 440, 443). Additionally, *457 disregarding the express language employed by decedent would result in rewriting his will, something that the courts will not do.
The court also finds without merit Rex’s contention that the inclusion of trust provisions in article Ninth of the will implies a condition of survival. Rex maintains that the reason for the trust provisions in article Ninth was that decedent was looking beyond his grandchildren as his ultimate beneficiaries and providing for trusts for any minor great grandchildren and great great grandchildren who might become remaindermen. Otherwise, these latter trust provisions would be unnecessary as merely duplicative of those in articles Fifth and Sixth. The court disagrees for several reasons. First, since the remainder of the article Sixth Trust might well have vested in issue of Margaret who were minors, the trust provisions set forth in article Ninth still serve a purpose. Second, article Ninth consists of the boilerplate clauses frequently included in wills that enumerate the powers given to executors and trustees and that set up trusts for minors. Attorney draftsmen generally consider it good practice to include these provisions in the event of unforeseen contingencies. The court notes that the particular trust provisions in article Ninth provide that the principal and all accumulated income be delivered and paid over to the minor upon attaining majority (not age 30) and further that “in case of his or her death before attaining majority, the principal and all accumulated income of his or her share or part shall be disposed of as a part of his or her estate.” This provision gives added support to the court’s conclusion as to the remainder of the article Fifth Trust.
Finally, the court finds that the presumption against intestacy and the preference for complete disposition are applicable with respect to the distribution of the article Fifth Trust remainder. It is generally presumed that by making a will the testator intended to dispose of his entire estate (see, e.g., Matter of Bellows, 65 NY2d 906, affg 103 AD2d 594; Matter of Birdsell, 271 App Div 90; Matter of Young, 62 Misc 2d 86, 90; 11 Warren’s Heaton, Surrogates’ Courts § 187.04 [4]). Under the circumstances, the court reiterates its findings that there existed no condition of survival of the life income beneficiary and the estates of Alline and Douglas were therefore vested in the article Fifth Trust remainders at the testator’s death. Otherwise, the article Fifth Trust remainders would pass by intestacy, a result clearly not intended by decedent.
It has already been mentioned that both Alline and Douglas were domiciled in California at their deaths. Consequently, *458 this court concludes that only the courts of California, construing that state’s law, should determine the ultimate distribution of their estates.
Petitioner’s prayer for trustee’s commissions is granted to the extent allowed by statute; petitioner’s prayer for legal fees is granted in the amount of $30,000 plus disbursements, of which $20,000 has already been paid.

. Article Fifth provided for contingent dispositions, none of which was ever activated.

. According to information supplied to the court, the article Fifth Trust and the article Sixth Trust have been administered since they were funded in 1957 as a single trust. While Lewis was alive, distributions were made one third to him and two thirds to Margaret, after deductions for expenses. When Margaret subsequently succeeded Lewis as the income beneficiary of the article Sixth Trust, the trusts still bore the same proportion to each other as they had at the outset. The expenses and income have continued to be charged to the trusts as a single trust over the years. It is thus urged that the net value of the remainder of the article Fifth Trust be considered as being exactly equal to twice the net value of the remainder of the article Sixth Trust. The court notes that no one has voiced objections to such apportionment.

. Domestic Relations Law § 117 (2) was amended in 1986 to provide that in situations of intrafamily adoptions, such as here where Bonnie’s widowed mother is married to Bonnie’s adoptive stepfather, adoptees frequently do not lose their rights to benefit as members of a class under wills and trust instruments of their natural kindred (L 1986, ch 408, § 1). However, two other provisions of the amended statute render it inapplicable to the present situation. First, it pertains only to wills executed after August 31, 1986. Decedent’s will was executed in 1942. Second, the relationship of the testator or creator must be no more remote than a grandparent of the adoptee.