■ In the Matter of NORMAN PERLMAN, Deceased. WENDY PERLMAN, Appellant; HILDEGARD PERLMAN et al., Respondents. [57 NYS3d 54]—

In a probate proceeding in which Wendy Perlman petitioned, inter alia, for a determination that the beneficiary of the decedent's Individual Retirement Account held by Ameriprise Financial Services is a testamentary trust as set forth in the decedent's last will and testament, Wendy Perlman appeals from an order of the Surrogate's Court, Nassau County (McCarty III, S.), dated November 25, 2014, which denied that branch of her petition which was for a determination that the beneficiary of the subject Individual Retirement Account is a testamentary trust as set forth in the decedent's last will and testament, and directed that the proceeds of the subject Individual Retirement Account be paid to Hildegard Perlman, as default beneficiary.

Ordered that the order is reversed, on the law, with one bill of costs, that branch of the petition which was for a determination that the beneficiary of the subject Individual Retirement Account is a testamentary trust as set forth in the decedent's last will and testament is granted, and the matter is remitted to the Surrogate's Court, Nassau County, for a determination with respect to the remaining branches of the petition.

On January 22, 2007, the decedent, Norman Perlman, signed a beneficiary designation form in connection with a certain Individual Retirement Account held by Ameriprise Financial Services (hereinafter the IRA). The form is handwritten and provides for two primary beneficiaries, with 33.3% of the proceeds going to "The trust under my last will & testament for Hildegard Perlman (wife)" and 66.6% to "The trust under my last will & testament for Wendy Perlman (daughter)."

On February 5, 2007, the decedent executed his Last Will and Testament (hereinafter the Will). The Will provides in Article SECOND:

"All the residue of my estate, both real and personal and wheresoever situate, I give, devise and bequeath to the Trustee of a living trust created under an agreement which I have executed immediately before my execution of this will, which is designated the NORMAN PERLMAN LIVING TRUST. If the living trust has terminated at my death, or if it is ineffective for any reason, then my Executor shall give the residue to my Trustee, hereinafter named, to be managed as follows:

"(1) The Trustee shall manage, invest and reinvest all of the trust property, shall collect and receive the income therefrom and shall pay one-third (1/3) of the net income to my wife HILDEGARD PERLMAN, and the remaining two thirds (2/3) of the net income to my daughter WENDY PERLMAN, for so long as HILDEGARD PERLMAN lives, in quarter-annual or more frequent intervals as determined by my Trustee in his absolute discretion.

"(2) Upon the death of HILDEGARD PERLMAN, all of the net income from trust property shall then be distributed to WENDY PERLMAN for as long as she lives, in quarter-annual or more frequent intervals as determined by my Trustee in his absolute discretion.

"(3) If WENDY PERLMAN shall predecease HILDEGARD PERLMAN, all of the net income shall then be distributed to HILDEGARD PERLMAN for as long as she lives, in quarter-annual or more frequent intervals as determined by my Trustee in his absolute discretion.

"(4) Upon the death of both HILDEGARD PERLMAN and WENDY PERLMAN, all remaining Trust property shall be distributed to my grandchildren ADAM PERLMAN, BRANDON PERLMAN and JASON PERLMAN in equal shares, per stirpes, in accordance with Article FIFTH herein."

Also dated February 5, 2007, is the Norman Perlman Living Trust Declaration of Trust (hereinafter the Living Trust). The Living Trust provides, in Paragraph (3) (B):

"Upon the Grantor's death all trust property shall be managed by my Trustee as follows:

"(1) The Trustee shall manage, invest and reinvest all of the trust property, shall collect and receive the income therefrom and shall pay one-third (1/3) of the net income to my wife HILDEGARD PERLMAN, and the remaining two thirds (2/3) of the net income to my daughter WENDY PERLMAN, for so long as HILDEGARD PERLMAN lives, in quarter-annual or more frequent intervals as determined by my Trustee in his absolute discretion.

"(2) Upon the death of HILDEGARD PERLMAN, all of the net income from trust property shall then be distributed to WENDY PERLMAN for as long as she lives, in quarter-annual or more frequent intervals as determined by my Trustee in his absolute discretion.

"(3) If WENDY PERLMAN shall predecease HILDEGARD PERLMAN, all of the net income then shall be distributed to HILDEGARD PERLMAN for as long as she lives, in quarter-annual or more frequent intervals as determined by my Trustee in his absolute discretion.

"(4) Upon the death of both HILDEGARD PERLMAN and WENDY PERLMAN, all remaining Trust property shall be distributed to my grandchildren ADAM PERLMAN, BRANDON PERLMAN and JASON PERLMAN in equal shares, per stirpes, in accordance with Section Five (5) herein."

The decedent also signed a subsequent beneficiary designation, dated February 15, 2007, with respect to the IRA. The second designation was identical to the first one signed on January 22, 2007.

The decedent died on November 16, 2008, leaving the IRA as the only significant asset of his estate. The petitioner Wendy Perlman (hereinafter the daughter) commenced this proceeding seeking, inter alia, a determination that the IRA proceeds must be distributed as set forth in the trust established pursuant to the Will (hereinafter the Testamentary Trust).

The Surrogate's Court erred in determining that no Testamentary Trust came into existence. In construing a will, the court's foremost objective is ascertainment of the decedent's intent, and, concomitantly, effectuating the will's purpose (*see* *Matter of Carmer*, 71 NY2d 781, 785-786 [1988]). The decedent's intent " 'must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed' " (*Matter of Larkin*, 9 NY2d 88,

91 [1961], quoting *Matter of Fabbri*, 2 NY2d 236, 240 [1957]). Thus, the individual parts of the will must be read in relation to its dominant purpose or plan of distribution (*see Matter of Fabbri*, 2 NY2d at 240). Accordingly, when the entire will manifests a general testamentary scheme, it is the duty of the courts to carry out the testator's purpose, even if general rules of interpretation might point to a different result (*see Matter of Bieley*, 91 NY2d 520, 525 [1998]).

Here, the decedent's intent to be gleaned from the Will as to who should receive his assets is very clear. The decedent's expressed intent in his Will and in every other relevant document, including the two IRA beneficiary designations, is to provide one third of the income from a trust to Hildegard (hereinafter the wife), and two thirds of the income from that trust to the daughter.

The wife nevertheless contends that pursuant to the terms of the Will, no Testamentary Trust was created into which the IRA proceeds could be transferred, because the Living Trust was neither terminated nor ineffective at the time of the decedent's death. Such a constrained reading of the Will illustrates "the aptness of Judge Learned Hand's wise and trenchant observation that courts should be wary of making 'a fortress out of the dictionary,' since there 'is no more likely way to misapprehend the meaning of language . . . than to read the words literally, forgetting the object which the document as a whole' seeks to achieve" (*Matter of Fabbri*, 2 NY2d at 240, quoting *Cabell v Markham*, 148 F2d 737, 739 [1945]).

The drafter of the Will testified at his deposition that the decedent not only specifically intended to place the IRA proceeds into the Living Trust, but that the IRA was, in fact, "[t]he only asset" intended to fund the Living Trust. It is undisputed, however, that the Living Trust could not receive the IRA. Under the circumstances, it is evident that the Living Trust was ineffective in carrying out the very purpose for which it was created. Therefore, under the alternative disposition and residuary provisions of article SECOND of the Will, the Testamentary Trust became available to receive the IRA proceeds (*see* EPTL 13-3.3 [a] [2]), and it follows that the decedent's beneficiary designation with respect to the IRA can, and must, be enforced as written, and the order appealed from must be reversed.

In light of our determination, we remit the matter to the Surrogate's Court, Nassau County, to determine, in the first instance, the remaining branches of the petition, which remain pending and undecided (*see Katz v Katz*, 68 AD2d 536 [1979]). Chambers, J.P., Austin, Roman and Barros, JJ., concur.