Burke, J.
In the Fifth paragraph of the will under construction, decedent left $300,000 in trust to his wife for life. The paragraph further provides: “ I give and bequeath the remainder of said trust fund, upon her death, to my brothers, Badrig Gulbenkian and Harutune Gulbenkian, in equal shares and their several descendants per stirpes ” (emphasis added).
The issue here presented is whether' the concluding phrase bequeathing to the “ several descendents per stirpes ” is to be considered as surplusage or as a substitutionary gift conditioned upon the death of the remaindermen. It is oiir opinion that decedent intended a substitutionary gift.
Testator died July 23, 1918, survived by his wife, the life beneficiary, and Ms brothers, the remaindermen, both of whom predeceased the wife who died in 1957. By their wills, the remaindermen bequeathed their entire interest in the trust to the Gullabi Gulbenkian Foundation, a charitable corporation created by the testator in the will presently under consideration. In this construction proceeding, appellants contend that the remainder interests were vested subject to being divested, in *369 favor of the descendants per stirpes, if remaindermen were not living at the time of distribution. The Gulbenkian Foundation, represented by the trustees and the Attorney-General of the State of New York, contends, on the other hand (1) that the gift was indefeasibly vested, and (2) that if any substitution was intended it was to take effect only if the remaindermen failed to survive the testator rather than the life beneficiary. The latter alternative suggested by the respondents is not, according to well-settled authorities, acceptable.
“ [I] t is quite correct that ordinarily where there is a devise or bequest to one person and in case of his death to another, it is to be construed as referring to death in the lifetime of the testator. However * * * ‘ [t]here is * * * a qualification, or, more properly speaking, an addition to this rule which is equally well established, and this seems to have been overlooked by the learned [court below] ’ [cases and authority cited]. ‘As cases very like the present demonstrate, absent language pointing a contrary intention, words of survivor-ship refer to the time of the testator’s death “ only in the case of an absolute devise or bequest to one and in case of his death to another ’ ’; they carry no such implication where, as in the will under consideration, the first devisee or legatee takes a life estate. (Mullarky v. Sullivan, 136 N. Y. 227, 231; see, also, Matter of Parsons, 242 N. Y. 246, 250; Matter of Buechner, 226 N. Y. 440; Matter of Palis, 220 N. Y. 196, 204; Lyons v. Ostrander, 167 N. Y. 135, 140; Restatement, Property, § 251, p. 1266.) ’ (Matter of Gautier, 3 N Y 2d 502, 508, supra.) ” (Matter of Larkin, 9 N Y 2d 88, 92-93.)
The more difficult problem presented is whether the testator intended an indefeasible vesting rather than, as in Matter of Larkin (supra), a vested remainder in fee subject to being divested by the remaindermen’s failure to survive. In other words, did he intend by any event whatever to have the children take by substitution (Lyons v. Ostrander, 167 N. Y. 135; Matter of Bigelow, 285 App. Div. 1072), or was the final phrase in the Fifth paragraph merely one of limitation, describing the nature of the estate. Since the latter construction would require us to treat the final words as mere surplusage, it must pass rigorous tests.
*370 These words obviously were not utilized to prevent a lapse of legacy. At the time of the execution of the will herein, section 29 of the Decedent Estate Law provided that there could be no lapse of legacy in situations of this kind.
We have said that “ Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant.” (Matter of Buechner, 226 N. Y. 440, 443.) Therefore, even if this single phrase were somewhat equivocal, we may still glean the testator’s dominant purpose ‘ ‘ from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed.” (Matter of Fabbri, 2 N Y 2d 236, 240, emphasis supplied; Matter of Gautier, 3 N Y 2d 502); and this purpose must prevail regardless of the fact that a literal interpretation might yield an inconsistent meaning because of the language or format employed. (Matter of Larkin, supra, p. 91; Matter of Fabbri, supra.) The phrase, however, in and of itself is indicative of testator’s ultimate purpose and does evidence an awareness of the fact that his brothers might not survive. If he had intended an indefeasible gift, he could have ended paragraph Fifth after the bequest of the remainder “in equal shares ”. His addition of the phrase “ and their several descendants, per stirpes,” certainly is a disclosure of his intention to have the descendants take the share of the parent who failed to survive distribution. (See Matter of Barr, 233 App. Div. 290, 293, affd. 258 N. Y. 592 on the concurring memorandum at the Appellate Division.)
The inarticulate use of the word ‘ ‘ and ’ ’ instead of “ or ” is of no consequence in this text. Although a use of the disjunctive (which we may substitute in place of the conjunctive used, Roome v. Phillips, 24 N. Y. 463, 469; Scott v. Guernsey, 48 N. Y. 106, 121; Matter of Wells, 113 N. Y. 396, 402-403) would have mandated a substitutional construction of the remainder interest, we are persuaded to draw the same conclusion by a comparison of paragraph Fifth with the other dispositive provisions. For example, in paragraph Eleventh testator made it abundantly clear that the residue of his estate was to be indefeasibly vested in his brothers under any and all circumstances by using-the time-honored and perfect words of limitation, i.e., 11 their several heirs and assigns, absolutely ’ ’. However, in paragraphs *371 Third, Fourth and Sixth*, the contingency of a demise prior to distribution is concededly provided for by the substitution of descendants and the method in which they should share, i.e., per stirpes. In this light, we should not distort by excision the almost precise language used in article Fifth merely because it was not as clearly spelled out as in the Third, Fourth and Sixth paragraphs. It is of much more significance that the testator failed to use established words which he knew would surely (as in par. Eleventh) create an indefeasible gift. (See Matter of Krooss, 302 N. Y. 424, 428-429.) His adoption, instead, of other technical language used in other provisions to provide a substitutionary gift makes it ‘ ‘ clear and decisive ’ ’ that the remainder, rather than absolute, was subject to qualification, i.e., survival.
Moreover, a belief that a substitutional gift was intended gains support from the presumption in favor of a testator’s relatives as against strangers to his blood (7 Warren’s Heaton, Surrogates’ Courts, Construction Favoring Heirs and Next of Kin, § 21, par. 3, p. 171; Matter of Robinson, 155 Misc. 412, 415; March v. March, 186 N. Y 99; Matter of Larkin, supra), regardless of the fact that the ‘ ‘ stranger ’ ’ in this instance was a charitable foundation originally created by the same testator with distinct funds in another provision of the will. A reading of the will as an entity indicates decisively that testator segregated his funds carefully, indicating his desire in certain instances, as here, that they be enjoyed by his closest blood relations and their descendants.
This conclusion is also not inconsistent with the familiar canon of construction required in doubtful cases in order to *372 obtain an early vesting (Walsh, Law of Property, Rules of Construction, § 246 et seq.; however, see § 253). Nevertheless, it should once again be emphasized that ‘ ‘ [n] o such construction mandates that property be indefeasible/ or absolutely vested. * * * the courts have held that the ‘ language, such as that used by the testator here, or language substantially identical, creates a vested remainder in fee subject to be divested by the remainderman’s failing to survive the life beneficiary ’ if the remainderman leaves descendants surviving [cases cited]. In the latter event the children take by substitution [cases cited] ” (Matter of Larkin, supra, p. 93).
Accordingly, the order appealed from should be reversed, with costs to all parties filing briefs, payable out of the estate.

 “ Third : I * * * bequeath to my sister * * *, and in ease of her prior death, to her descendants per stirpes, the sum of Fifty Thousand Dollars ($50,000).
Fourth: [Same to another sister] # * *
Sixth : [Trust to pay income to nephew for 10 years and then to pay principal] In ease of his death prior to the expiration of said ten years period, I give and bequeath the remainder of said trust fund to his descendants, if any, per stirpes, and in ease he shall die within said ten years period without issue, then * * * to the trustees of the Armenian Hospital of Saint Savior at Constantinople,”