Edward M. Horey, S.
George C. Akins died a resident of Cattaraugus County on August 12, 1961. He left a will which was admitted to probate. The provisions of the will were brief. Paragraph first directed the payment of debts. Paragraphs second and third made bequests of $5,000 and $2,000, respectively, to named relatives. Paragraph seventh consisted of a *949 brief disposition of his residuary estate to his sister, Alice Ellison. It is the intervening paragraphs fourth, fifth and sixth which give rise to the petition for construction.
Under paragraph fourth the testator made a devise of "the life use of my house and lot on Chestnut Street in the village of Randolph” to his sister "Alice Ellison of Randolph, New York.”
In paragraph fifth testator bequeathed to his sister "Alice Ellison, the life use of all stock in Borden Company which I may own at the time of my death which means that she shall have all the dividends received from said stock as long as she shall live.”
The remainder interest in the real property and the stock were provided for in paragraph sixth. There the testator stated: "At the death of my sister, Alice Ellison, I give, devise and bequeath my house and lot on Chestnut Street above referred to and all stock in the Borden Company which I may own to my son, Ellsworth Akins of North Collins, New York.”
During the lifetime of the life tenant, Alice Ellison, the remainderman, Ellsworth Akins, conveyed his remainder interest in the real property by a deed and for a money consideration to one Charles F. Rogers.
The remainderman, Ellsworth Akins, then died testate on March 6, 1970 while the life beneficiary was still living. Under the terms of his will he devised and bequeathed his entire estate to his wife, Alice Akins. His will then stated that in the event his wife predeceased him he bequeathed his "remainder interest in the Borden Company stock to my three sons, Martin, Vaughn and Douglas Akins, share and share alike.” The wife of Ellsworth Akins, Alice Akins, survived him, as did his children.
The life tenant, Alice Ellison, then died on October 25, 1975.
Presented for determination is (1) the ownership of the house and lot and (2) the ownership of the Borden Company stock. Did the deed from the remainderman effectively transfer the former and his will the latter? The resolution of these matters depends upon the answer to the legal question posed, viz.: "Did the will of the testator contain an express or implied condition that the remainderman survive the life tenant?” The answer to the question starts with a consideration of the nature of the future interest which the remainderman held.
Our current statutes classify future interests as "vested” *950 (EPTL 6-4.7-6-4.9) or subject to a condition precedent (EPTL 6-4.10) that is a "contingent” interest. It is important to notice that both "vested” and "contingent” future interests are descendable, devisable and alienable under the express terms of EPTL 6-5.1 (Matter of Sweazey, 2 AD2d 292).
While it is true that most earlier case decisions which treat the question of survivorship in future interests involve themselves with a discussion of whether the interest of a remainderman is vested or contingent, that point is really not decisive of the question.
As is pointed out in Warren’s Heaton on Surrogates’ Courts (7B Warren’s Heaton, Surrogates’ Courts,’ § 77, par 4, subpar [c]) and noted in Matter of Bogart (62 Misc 2d 114, 117), a person may have a "vested” interest which is subject to a condition of survival. He may also have a "contingent” interest which is not subject to a condition of survival. It is for this reason that the "vested” and "contingent” approach has been criticized. Examples may be helpful.
The fact situation in Matter of Judge (52 Misc 2d 535) typifies a situation of a vested interest which is, nevertheless, subject to a condition of survival. There, a testator by will made a gift to mother and brothers and sisters (by individual name) while unmarried and living at home; he then provided that upon the death of the survivor of Teresa and Anna (two relatives of the decedent) the gift was to pass to those brothers and sisters who were at such time unmarried and living at home. It was held that the conditions of survival, living at home and being unmarried were conditions subsequent which could and did defeat the gift over of a vested remainder interest.
In Matter of Bogart (62 Misc 2d 114, supra) the court was presented with unbelievably difficult provisions. We attempt to precis the fact situation, with concededly questionable results because of its complexity, as follows: A bequest to my children for life, and in case any of my children shall die without issue or descendants surviving him or her, then the share of such deceased child to the issue of surviving children living at the time of death of the child so dying; and in case all children die without issue or descendants surviving them, then to the children of P and S. It was held that the interest of the children of P and S was properly classified as a contingent interest without condition of survival. It was also *951 held alternatively that their interest was vested subject to divestment.
These cases point up the proposition that the affixing of labels of "vested” and "contingent” does not determine the need of survivorship. If survivorship of the remainderman until the death of a life tenant is not required, then his remainder interest should be described as "indefeasibly vested” or "absolutely vested” and not merely "vested”.
There is nothing which would help to advance and clarify a murky area of the law of future interests and reconcile decisions more than precision and definiteness of description of remainder interests.
What determines whether survivorship is a limitation on a devise or bequest and thus, prevents indefeasible vesting, is the terms of the will which created it. (7B Warren’s Heaton, Surrogates’ Courts, § 77, par 4, subpar [c], supra; Matter of Gautier, 3 NY2d 502, 508.) However, it is not the language of an individual bequest or a devise that determines the matter. The will must be read "as an entirety” to make the determination. (Matter of Larkin, 9 NY2d 88, 91; Matter of Gulbenkian, 9 NY2d 363, 370; Matter of Bogart, 62 Misc 2d 114, supra.)
Two recent decisions of the Court of Appeals, viz.: Matter of Gulbenkian (supra) and Matter of Larkin (supra) addressed themselves to the issue of the need of survivorship. These two decisions made important qualifications to a canon of construction which was often used to resolve earlier cases. For this reason it is necessary that a detailed review of these cases and of their rationale be made to properly determine the instant case. While the problem raised is the same, the fact situation now presented differs from each of the two cited cases.
In Matter of Larkin, the court found that language relating to a trust created in paragraph eleventh of the will, that provided for payment to descendants of life beneficiaries in the event of the death of the life beneficiaries, gave meaning to equivocal provisions of other paragraphs of the will which simply created life estates and remainders without further qualifying language. Reading the will in its entirety, and applying the intention manifested in paragraph eleventh to the earlier provisions, the court found an intention on the part of the testator that survivorship of the remainderman until the death of the life tenant was required. Accordingly, *952 the court determined that the interests of the remainderman, classified as vested subject to divestment, were in fact divested by his failure to survive the life tenant. All remainder interests were held to pass to the descendants of the remainder-man under the terms of the original will and not to the legatee named in the will of the remainderman.
In Matter of Gulbenkian, the court found that the addi- " tional language of "and their several descendants per stirpes” which was attached to the bequest of a remainder interest to two named brothers negatived an intention of an indefeasible vesting in the remaindermen. The court found these additional words to indicate an intention of the testator that descendants of two remaindermen who had not survived the life beneficiary should take to the exclusion of a common legatee named in the wills of the remaindermen.
In both Matter of Gulbenkian and Matter of Larkin, the court made special note that there has been and continues to exist a well-established rule of construction that provides that a devise or bequest to one person and in case of his death to another, is to be construed as referring to death during the lifetime of the testator and not during the lifetime of the life tenant. However, the court pointed out that this rule was subject to a major qualification. According to the court this rule of construction has application "only in the case of an absolute devise or bequest to one and in case of his death to another”. (Matter of Larkin, 9 NY2d 88, 93, supra.) It does not carry such implication where the first devisee or legatee takes a life estate. (Matter of Gulbenkian, 9 NY2d 363, 369, supra; Matter of Larkin, supra, pp 92-93.)
Since we are dealing in the instant case with a preceding life estate the cited general rule of construction is no longer available. We must look further.
The Court of Appeals also noted that there was another familiar canon of construction in favor of vesting. The court stated that it was in agreement that this canon may be applied in cases of doubt. It added the caveat, however, that the application of this canon did not necessarily mean that the vesting would be indefeasible or absolute to the end that the remainderman would take whether he survived the life tenant or not. It noted that this canon when applied to language identical or similar to that in Matter of Larkin could result in a determination of a vested interest subject to *953 divestment upon failure to survive the life tenant. (See Matter of Larkin, supra, p 93.)
Since the instant will might be construed as creating a remainder interest vested subject to divestment on the condition that the remainderman failed to survive the life tenant, as well as one construed as indefeasibly vested and thus transferable by the deed and will of the remainderman, we must look even further for appropriate determinants.
Those determinants, in the opinion of this court, are found in part in Matter of Gulbenkian (supra, p 370) wherein the court first stated of the testator: "If he had intended an indefeasible gift he could have ended paragraph fifth after the bequest of the remainder in equal shares’. [Emphasis added.] His addition of the phrase 'and their several descendants, per stirpes,’ certainly is a disclosure of his intention to have the descendants take the share of the parent who failed to survive distribution. ”
A determinant is also gleaned from a later statement (p 371), "It is of much more significance that the testator failed to use established words which he knew would surely (as in par. eleventh) create an indefeasible gift * * * His adoption, instead, of other technical language used in other provisions to provide a substitutionary gift makes it 'clear and decisive’ that the remainder, rather than absolute, was subject to qualification, i.e., survival.”
With the quoted excerpts in mind, it is noted that in the instant case in making a bequest of the remainder interests, the testator made it "nominatim”, i.e., to a legatee by name. There was no further language employed in the bequests. No technical language was added by testator to imply a substitutionary gift to anyone. Equally significant is the fact that the instant will does not contain other dispositive provisions from which an implication of the need of survivorship can be found. Finally, this court believes that the practice of the testator of making a bequest to a named individual without further language is an established practice. These facts argue strongly for an indefeasible and absolute vesting of the remainder interest and the avoidance of a qualification of survival.
Further support for this conclusion is found in the decision of Matter of Krooss (302 NY 424, 428). There, the court in reviewing the question of survivorship under terms of a will stated: "The will under consideration is simple in language and simple in plan. The testator gave his widow a life estate *954 and a power to use the principal if it proved necessary for her maintenance and support. What remained after her death he gave 'absolutely and forever’ in equal share to his two children, Florence and John. Had the will stopped at this point, there would be no question that the remainders were vested. And, since that is so, additional language will not be read as qualifying or cutting down the estate unless that language is as clear and decisive as that which created the vested remainder.” (Italics added.)
It is clear from a reading of the opinion that the use of the term "vested” by the court was meant to mean indefensibly vested in contrast to vested subject to divestment.
Again, note is made that in the case for decision, the will stopped at the point of naming the legatee of the remainder interests.
Staples v Mead (152 App Div 745, affd 214 NY 625) is a case that appears particularly in point. There, a remainder interest had been left under a will to a grandchild, John. It was subject to divestment upon his death if he died leaving issue. John died before the termination of the life estate. He died without issue. Substitute remaindermen claimed the remainder interest. Legatees named in John’s will also claimed the remainder interest. The court held in favor of the legatees. In reaching its decision the court said (Staples v Mead, 152 App Div 745, 748-749, supra): "It is true that the death of John S. before his mother, leaving issue, was a contingency upon which his estate might have been divested, and vested in his issue; but this is not an event upon which the vesting in him depended. (Doscher v. Wyckoff, 132 App. Div. 139, 142.) 'It was not a gift limited to take effect upon an uncertain event; it was a gift, which the uncertain event might chance to defeat.’ (Stringer v. Young, 191 N. Y. 157, 162.) The event in this case, the death of the donee leaving issue, did not happen, and his gift was not defeated, but remained vested. ” (Italics added.)
In the instant case there was no provision stated which would defeat the gift. By a parity of reasoning it would appear a fortiori that the interest vested in the remainderman at the death of the testator has "remained vested”. There is nothing stated which directly or impliedly would defeat the gifts.
Further support for the proposition that the remainders here were not subject to the qualification of survival is found in authoritative text.
It is said that the general rule is that a condition of survival *955 will not be imputed unless unequivocally expressed. (9A Rohan, NY Civ Prac, § 6-4.7, subd [4]; 4A Warren’s Weed, NY Real Property, Remainders, § 2.04; 7B Warren’s Heaton, Surrogates’ Courts, § 77, par 4, subpar [c], supra.)
It is said that this general rule of construction against imputation of condition is further strengthened to become "almost irrebutable” when the remainder interest is given to an individual by name in contrast to a class. This is the situation which prevails in the case at bar. This strong rule is based upon the constructional preference theory that if a testator had in fact thought about where the remainder interest was to go in the event that an individually named remainderman did not survive, the testator would have wanted the named remainderman to have decided that matter precisely as would have happened if the remainderman had survived to receive actual possession. Thus, the theory proceeds that the decision of disposition made by the will or intestacy of the deceased remainderman should be given effect. (See 7B Warren’s Heaton, Surrogates’ Courts, § 77, par 4, subpar [c], supra.)
In the light of the decisions reviewed, the analysis of their rationale which has been made, and the text authorities noted, the court reaches the conclusion that the interests of the remainderman of the stock and of the real property were indefeasibly and absolutely vested. Survival of the remainder-man until the death of the life tenant was not a condition attached to either remainder interest. Alienable by statute, the remainder interest in the real property was effectively conveyed to the grantee, Charles F. Rogers, by the deed from the remainderman. Divisable by the same statute, the remainder interest in the stock passed by the will of the remainder-man to Alice Akins. This is the construction reached.