Opinión de conformidad emitida por
la Juez Asociada Se-ñora Rodríguez Rodríguez,
a la que se une el Juez Pre-sidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.
El presente recurso requiere que determinemos la rela-ción existente entre un testamento y un fideicomiso otor-gados en el estado de Nueva York, así como el efecto —si alguno— de una cláusula in terrorem incluida en el fidei-comiso, sobre los derechos de la peticionaria. Igualmente, debemos determinar si nuestros tribunales son un foro in-apropiado para dilucidar parte de estas controversias. Por último, se nos solicita que revisemos una determinación de responsabilidad civil extracontractual por, entre otros asuntos, haberse presentado un pleito civil. Veamos.
*585 I
El 7 de julio de 2004, el señor Vincent C. Hart creó un fideicomiso inter vivos(1) revocable (revocable living trust). Dicho instrumento se perfeccionó en Nueva York, estado en el cual él residía y estaba domiciliado. El fideicomiso se estableció con una aportación económica inicial de $10, pero permitía que posteriormente se realizaran mayores contribuciones de cualquier tipo. Entre las reglas de admi-nistración que incluyó el Sr. Hart en el documento, dispuso que al momento de su muerte los bienes del fideicomiso se distribuirían de la siguiente manera: se realizarían varios pagos en efectivo a doce personas específicamente nombra-das en el documento; se distribuirían cuatro vehículos de motor entre cuatro personas, y por último, el resto de los bienes del fideicomiso se dividirían en partes iguales entre sus dos hermanas, las señoras Judy Holahan (20%) y Jane Popp (20%), sus dos sobrinos, Thomas Holahan (20%) y Karen Count (20%) y su amiga la señora María L. Bonet (20%).
En el fideicomiso también se incluyó una cláusula in terrorem (contest clause), en la cual el Sr. Hart dispuso que cualquier persona que tratara de atacar u oponerse, directa o indirectamente, a la validez del fideicomiso, incluso sus enmiendas, o presentara una acción legal para revo-carlo, se consideraría como premuerta y perdería todo de-recho o interés en la propiedad del fideicomiso. Por último, el Sr. Hart estipuló que la validez del instrumento se debía determinar según las leyes del estado de Nueva York, y las controversias sobre su interpretación y administración se atenderían de acuerdo con las leyes del estado en el que se estuviera administrando.
*586 Aproximadamente un año más tarde, el 11 de mayo de 2005, el Sr. Hart otorgó un testamento en Nueva York. En él ordenó que todas sus propiedades inmuebles presenta-das en Puerto Rico se vendieran al justo valor del mercado y los ingresos producto de la venta divididos en partes iguales entre sus dos hermanas, sus dos sobrinos y su amiga; los mismos beneficiaros residuales mencionados en el fideicomiso. Asimismo, pidió que se tomara en conside-ración la distribución de tres autos realizada en el fideico-miso (aparentemente estos tres vehículos estaban en los inmuebles de Puerto Rico y el cuarto en Nueva York). En la siguiente sección del testamento, el Sr. Hart ordenó que todas sus propiedades restantes, de cualquier naturaleza y clase, dondequiera que estuvieran, se entregaran a su fideicomiso.
Así las cosas, el 10 de marzo de 2006, el Sr. Hart falleció en el estado de Nueva York sin herederos forzosos. El 24 de mayo de 2006, la Sra. María L. Bonet presentó en el Tribunal de Primera Instancia una demanda de división de comunidad de bienes contra las Sras. Judith Holahan y Jane Popp, las dos hermanas del causante.(2) Alegó que ella y el causante habían mantenido una relación consensual durante diecinueve años en la que hubo un pacto im-plícito de comunidad de bienes, y a la cual ambos aporta-ron labor, esfuerzo y sacrificio. Por ello, sostuvo que el testamento otorgado en Nueva York adolecía de ciertas de-ficiencias y que no se podía ejecutar hasta tanto se diluci-daran sus derechos sobre la alegada comunidad.
Poco después, la parte demandada presentó una moción ante el foro primario en la cual solicitó que se desestimara la acción por falta de partes indispensables, ya que no se había incluido en la demanda a los sobrinos del causante, quienes también tenían intereses en la ejecución del *587 testamento. En la alternativa, las demandadas informaron que en el estado de Nueva York ya había comenzado un procedimiento judicial para determinar quiénes eran los herederos del causante, por lo cual solicitaron que se para-lizaran los procedimientos en el Tribunal de Primera Ins-tancia hasta que culminara el caso en Nueva York. La parte demandante replicó que no interesaba impugnar la validez del testamento, sino obtener la mitad de los bienes pertenecientes a la supuesta comunidad de bienes que se había creado entre el causante y ella. Asimismo, solicitó permiso para enmendar la demanda e incluir a los dos so-brinos, a lo cual el foro primario accedió.
Posteriormente, el 21 de diciembre de 2006, la parte demandada presentó su contestación junto a una reconvención. Allí alegó que el Sr. Hart expresó su última voluntad mediante dos documentos “inextricablemente in-terlazados: un fideicomiso y un testamento”. Apéndice de Recurso de Certiorari, pág. 80. Alegaron que la cláusula in terrorem incluida en el fideicomiso era igualmente aplica-ble al testamento y, ya que los bienes del causante debían ser divididos entre todos los herederos a razón de 20% para cada uno, el tribunal debía emitir una sentencia declarato-ria para resolver que la parte demandante había violado dicha cláusula al exigir el 50% más un 20% adicional de los bienes, por lo cual no tenía derecho alguno a los bienes del caudal.
Así las cosas, el 23 de marzo de 2007, la parte deman-dante informó al tribunal que deseaba desistir de su re-clamo sin perjuicio, lo cual fue concedido por el foro primario. El 17 de octubre de 2007, la demandante pre-sentó su contestación a la reconvención y reiteró que su reclamo original sólo buscaba obtener un derecho que le asiste bajo nuestro ordenamiento, y no asumió ninguna postura que fuera contraria a la declaración del causante. Por ello, adujo que tenía pleno derecho a su participación del caudal relicto. Entre otras incidencias procesales, los *588 demandados solicitaron autorización al Tribunal de Pri-mera Instancia para vender las propiedades inmuebles del causante radicadas en Puerto Rico para satisfacer deudas contributivas relacionadas con los inmuebles. También su-girieron que los ingresos producto de las ventas fueran divididos entre los cuatro familiares nombrados en el testa-mento y una quinta parte —aquella que podría corresponder a la Sra. María L. Bonet— se depositara en el tribunal en espera de la resolución del presente pleito. El 11 de enero de 2008, el foro primario emitió una orden que autorizó la venta y ordenó el depósito de una quinta parte de los ingresos.
Por otro lado, el 15 de mayo de 2008, la parte deman-dada presentó una reconvención enmendada —autorizada posteriormente por el tribunal— para añadir una causa de acción por daños. Alegaron que desde la muerte del Sr. Hart la demandante había incurrido en una serie de actua-ciones que peijudicaron el valor de los bienes inmuebles, había causado daños emocionales a la familia del causante y produjo multas ascendientes a $206,856.96. Ese mismo día los demandados informaron que habían vendido dos de los inmuebles y satisficieron las deudas contributivas fede-rales y estatales. El 3 de junio de 2008, depositaron en el Tribunal de Primera Instancia un cheque por $50,000, can-tidad estimada por el albacea como la correspondiente a cada uno de los beneficiarios del testamento.
El 30 de julio de 2008, la parte demandante contestó la reconvención enmendada. Sostuvo que el fideicomiso y el testamento no están entrelazados y que los bienes inmue-bles localizados en Puerto Rico no forman parte de los bie-nes del fideicomiso. Asimismo, alegó que el lenguaje incor-porado en el fideicomiso, particularmente la cláusula in terrorem, no aplica al testamento. La demandante también argüyó que el tribunal no podía intervenir en la interpre-tación del fideicomiso ya que los contactos mínimos relacio- *589 nados a dicho documento están en Nueva York y su propio lenguaje requiere la aplicación de la ley de dicho estado. Por último, negó haber causado daños a los demandados.
Luego de varios conflictos procesales, el 15 de mayo de 2009, la parte demandada presentó en el Tribunal de Pri-mera Instancia una moción de sentencia sumaria parcial. En ésta expresó que no existían controversias de hecho pendientes de resolución, sino que el foro primario sólo de-bía resolver: (1) si la presentación de la demanda original en el caso de autos, más una reclamación adicional en Puerto Rico y otra en Nueva York, violó la cláusula in te-rrorem incluida en el fideicomiso del Sr. Hart; (2) si el fi-deicomiso y el testamento son documentos relacionados, y (3) si, independientemente de la cláusula in terrorem, la demanda original carecía de mérito, por lo cual procede la imposición de honorarios contra la demandante. En lo per-tinente, la parte demandada sostuvo que el testamento otorgado por el causante fue una enmienda al fideicomiso y que la reclamación de la demandante cuestionaba la divi-sión establecida en dicho documento, pues exigía la mitad del caudal sito en Puerto Rico. Igualmente, alegó que la acción de división de comunidad de bienes presentada por la demandante fue frívola y que esta, en un procedimiento separado, estaba impugnando el exequátur mediante el cual se legalizó el testamento del causante en Puerto Rico. También alegó que la parte demandante había comenzado una acción en los tribunales de Nueva York para solicitar un inventario e informe al albacea y fiduciario del testa-mento y el fideicomiso. Todo ello, según los demandados, constituía una clara violación a la cláusula in terrorem del fideicomiso, por lo cual la Sra. María L. Bonet había per-dido todos sus derechos sobre las propiedades del caudal.
En la moción de sentencia sumaria parcial también ale-garon que la resistencia de la demandante a vender los bienes de Puerto Rico ocasionó que disminuyera su valor *590 en el mercado y tuvieran que pagar multas por las contri-buciones sobre los inmuebles. Por lo anterior, solicitaron la imposición de honorarios de abogado.
El 29 de mayo de 2009, la parte demandante solicitó una prórroga de treinta días para contestar la moción de sentencia sumaria parcial. Aunque el foro primario conce-dió dicha prórroga el 1 de junio de 2009, la parte deman-dante presentó su réplica —y su propia solicitud de senten-cia sumaria— el 2 de junio, es decir, un día luego de vencer el término concedido. En la referida réplica, la parte de-mandante reafirmó que el fideicomiso del causante es un documento independiente de su testamento y que en este no existe una cláusula in terrorem. Igualmente, sostuvo que no es posible disponer de los bienes incluidos en el testamento utilizando cláusulas que no constan expresas en el propio documento. Alegó que las propiedades inmue-bles de Puerto Rico mencionadas en el testamento no for-man parte del fideicomiso. Por último, volvió a plantear que, por un lado e independientemente de lo anterior, la acción de división de comunidad de bienes que presentara inicialmente no constituyó una violación a la cláusula in terrorem contenida en el fideicomiso y, por otro lado, los tribunales de Nueva York son el foro más conveniente para dilucidar si dicha cláusula fue violada. Ello en parte por-que existen procedimientos en curso en la Surrogate’s Court de Nueva York relacionados al testamento y al fideicomiso.
El Tribunal de Primera Instancia emitió una sentencia sumaria parcial a favor de la parte demandada el 6 de julio de 2009, en la cual concedió todos sus reclamos. En sínte-sis, bajo el derecho vigente en Puerto Rico, resolvió que el testamento era una enmienda al fideicomiso y por ello la cláusula in terrorem aplicaba a ambos. También dispuso que la acción de división de comunidad de bienes instada por la Sra. María L. Bonet no tenía méritos y, junto con las acciones presentadas en los foros judiciales de Nueva York, *591 constituía una violación a dicha cláusula; por lo cual ella había perdido todos sus derechos sobre los bienes incluidos tanto en el testamento como en el fideicomiso. Asimismo, el foro primario concluyó que la conducta de la parte deman-dante fue temeraria por lo que debía compensar a los de-mandados por los daños sufridos, y ordenó la distribución del dinero consignado en el tribunal —producto de la venta de los inmuebles— entre los otros cuatro beneficiarios del testamento. El Tribunal de Primera Instancia decidió que la presentación tardía de la oposición que hizo la deman-dante, tuvo el efecto de aceptar todos los hechos alegados en la moción de sentencia sumaria parcial.
De dicha determinación recurrió la parte demandante ante el Tribunal de Apelaciones el 31 de julio de 2009. Allí alegó que el foro primario erró al no considerar su oposi-ción por presentarla un día después de vencer la prórroga concedida. De igual forma, reiteró sus argumentos en rela-ción a la independencia entre el testamento y el fideico-miso; la inaplicabilidad de la cláusula in terrorem al testa-mento; que sus actuaciones no violaban la referida cláusula, y que el mejor foro para evaluar los efectos de dicha cláusula eran las cortes de Nueva York. De otra parte, la recurrente añadió que no procedía la determina-ción de responsabilidad por daños.
Atendidas las posturas de las partes, el Tribunal de Apelaciones modificó y confirmó la sentencia parcial. Es-timó que aunque el foro primario debió considerar la opo-sición presentada por la demandante, no erró al determi-nar que debía responder por los daños que sus actuaciones durante el litigio hubieran causado a los recurridos. El foro apelativo intermedio concluyó que la cláusula in terrorem del fideicomiso se había incluido en el testamento porque en este se hace referencia a unas disposiciones del fideico-miso, y porque en el fideicomiso también se establecieron reglas para el momento de la muerte del causante. Al mismo tiempo, resolvió que el testamento es una enmienda *592 al fideicomiso, ya que mediante aquel se excluyeron los inmuebles de Puerto Rico de los bienes incluidos en el fideicomiso. En cuanto a la posibilidad de examinar la vio-lación de la cláusula in terrorem, el Tribunal de Apelacio-nes determinó que los tribunales de Puerto Rico tienen ju-risdicción para evaluar el testamento del Sr. Hart porque dispone de bienes sitos en nuestra jurisdicción. Sin embargo, modificó la sentencia por entender que el foro pri-mario erró al analizar la alegada violación de la cláusula in terrorem según el derecho de Puerto Rico, en vez de utili-zar el derecho del estado de Nueva York. Por ello devolvió el caso al foro primario para que volviera a examinar dicho asunto al amparo de la legislación y jurisprudencia neoyorquina.
Tras ser declarada “no ha lugar” una oportuna moción de reconsideración presentada al foro apelativo interme-dio, la parte demandante recurrió ante esta Curia me-diante recurso de certiorari y solicita que revoquemos las sentencias recurridas. El pasado 30 de abril de 2010 expe-dimos el recurso, tras lo cual ambas partes presentaron sus respectivos alegatos. En estos cada parte nos reitera los argumentos y las teorías presentadas ante los foros re-curridos, las cuales ya han sido descritas previamente. Visto todo lo anterior, pasamos a resolver.
II
La controversia que hoy atendemos trata sobre la inter-pretación del testamento y el fideicomiso que otorgó el Sr. Vincent C. Hart. Específicamente, debemos determinar si, de acuerdo con la cláusula in terrorem, la Sra. María L. Bonet perdió su derecho de participar en la distribución de bienes que ordenó el causante en dichos instrumentos. De otro lado, examinaremos si la conducta de la parte peticio-naria creó una causa de acción en daños a favor de los recurridos.
*593 Para una mejor comprensión del caso de autos, es nece-sario precisar la fuente del conflicto entre las partes. En esencia, se trata de la extensión de la cláusula in terrorem del fideicomiso a las disposiciones del testamento. Tanto la peticionaria como los recurridos coinciden en que la cláu-sula in terrorem está expresa en el fideicomiso. Empero, los recurridos sostienen que la cláusula también cubre el tes-tamento porque este enmendó el fideicomiso. Tal en-mienda, según alegan, es resultado de que en el fideico-miso el Sr. Hart había dejado instrucciones para disponer de todos sus bienes al momento de su muerte y, posterior-mente, en el testamento estableció unas reglas especiales para sus bienes inmuebles de Puerto Rico. Esta teoría pa-rece que la adoptaron los foros recurridos, ya que determi-naron que el testamento era una enmienda del fideicomiso.
Dicho esto, y antes de interpretar los contornos de los documentos en controversia, debemos aclarar que estos es-tán sujetos a las formalidades que establece el derecho del estado de Nueva York; ello ya que fue allí donde se otorga-ron ambos. 31 L.P.R.A. sec. 11; Cabrer v. Registrador, 113 D.P.R. 424 (1982). Siendo así, veamos algunas de las nor-mas de dicha jurisdicción.
III
A. Al igual que en Puerto Rico, en la mayor parte de las jurisdicciones estatales de Estados Unidos la voluntad del testador debe ser colegida de las palabras del propio testamento. Véanse: 31 L.P.R.A. sec. 2129; Licari v. Dorna, 148 D.P.R. 453, 461 (1999); W.J. Bowe y D.H. Parker, Page on Wills, Matthew Bender, 2004, Vol. 4, Sec. 30.2, pág. 7 (“Under most Wills Acts, it is from the words of the will that testator’s intention is to be deduced”). El estado de Nueva York también sigue la referida norma. Allí, las cor-tes están llamadas a realizar una lectura comprensiva de todo el testamento para ejecutar la intención del testador. *594 Matter of Larkin, 9 N.Y.2d 88 (1961); Matter of Fabbri, 2 N.Y.2d 236 (1957). Cuando dicha intención está clara-mente establecida en las disposiciones del testamento, es innecesario recurrir a otros documentos con el pretexto de hallar la voluntad del causante. Matter of Carper, 50 N.Y.2d 974 (1980); Matter of Gulbenkian, 9 N.Y.2d 363 (1961). Siendo así, las cortes no pueden añadir o suprimir palabras del testamento al ejercer su función. Matter of Krooss, 302 N.Y. 424 (1951).
De otra parte, es preciso recordar que tanto en Puerto Rico como en Nueva York, los testamentos y los fideicomi-sos son instrumentos jurídicos diferentes. Estos sirven ob-jetivos diversos y están regulados por distintas normas. Véase Bowe & Parker, op. cit., 2003, Vol. 1, Sec. 6.15. Sin embargo, aún tratándose de documentos independientes —especialmente en las tradiciones jurídicas del common law— estos pueden estar relacionados. Por ejemplo, la le-gislación neoyorquina permite que un fideicomiso inter-vivos revocable sea enmendado posteriormente mediante el testamento del fideicomitente, siempre y cuando exista en el testamento una orden expresa a esos efectos. NY CLS EPTL Sec. 7-1.16.
En otros estados es posible integrar a los términos del testamento disposiciones contenidas en otros documentos creados antes del testamento, ello a través de la doctrina conocida como “incorporación por referencia”. De manera que si en un testamento hay una referencia expresa a cláu-sulas de un fideicomiso creado previamente, se podría con-cluir que las mismas fueron incluidas en el testamento. Véase Bogert, Trusts and Trustees 2d Sec. 105, págs. 280-283 (1984) (“It is usually held that if a will refers to a document which is in existence at the time the will is executed, speaks of the document as so existing, clearly identifies the document, and shows an intent to incorporate it into the will, such incorporation may be held to have been effected so that the terms of the deed or other inter vivos *595 document become a part of the will and may be probated along with it”). (Citas omitidas.) No obstante, por más de un siglo —y como norma general— las cortes del estado de Nueva York han rehusado aplicar la doctrina de incorpora-ción por referencia. Su postura ha sido descrita como una medida de seguridad contra el fraude y el error. In re Fowles’ Will, 222 N.Y. 222, 232 (1918).
Otra forma en la que comúnmente se relacionan los tes-tamentos y los fideicomisos en la jurisdicción estadouni-dense, es mediante las disposiciones conocidas como “pour-over”. Usualmente, estas disposiciones se incluyen en el testamento para ordenar que todos o algunos de los bienes del caudal relicto se transfieran a un fideicomiso inter-vivos revocable, donde entonces se administrarán y distri-buirán de acuerdo con los términos del fideicomiso. NY CLS EPTL see. 3-3.7; In re Estate of Herrig, 471 N.Y.S.2d 809 (N.Y. Sur. Ct. 1984); Restatement of the Law (Third) of Property, Sec. 3.8 (1999) (“A ‘pour-over’ devise is a provision in a will that (i) adds property to an inter vivos trust or (ii) funds a trust that was not funded during the testator’s lifetime but whose terms are in a trust instrument that was executed during the testator’s lifetime”). Estas cláusulas pour-over, en las que no se altera el carác-ter independiente de cada instrumento, se han convertido en un mecanismo sumamente popular de la planificación hereditaria en Estados Unidos. Véanse: E. Clark, L. Lusky y A.W. Murphy, Gratuitous Transfers: Wills, Intestate Succession, Trusts, Gifts and Future Interests, 2da ed., Minnesota, West Publishing Co., 1977, pág. 334 (“The pour-over trust has become a popular and useful estate planning device whereby the testator directs that the distributable probate estate, in whole or in part, be added to a trust which the testator or someone else ... has previously established”); Bogert, supra, Sec. 264.5, pág. 430 (1992) (“Increasingly, in recent years, a revocable inter vivos trust agreement or declaration of trust has been used in con *596 junction with a will directing that all or a part of the residue of the estate be added to the trust in order to secure the unified administration of the trust, probate and other assets under the terms of one trust”); 1 Scott andAscher on Trusts Sec. 7.1.3, pág. 347 (2006) (“As these statutes became increasingly sophisticated, and as more and more states enacted them, the pour-over will became a standard estate planning technique”).
B. Vistos los principios hasta aquí señalados, pasemos a examinar las disposiciones pertinentes del testamento del Sr. Hart.
En el artículo 2 del testamento, el testador estableció cómo quería que fuera distribuida su propiedad al mo-mento de su muerte. En la primera sección ordena que sus bienes inmuebles en Puerto Rico se vendan y las ganancias se distribuyan entre cinco personas allí nombradas. Esta sección también solicita que se tenga en cuenta que dos automóviles y un tractor se le deben entregar a tres perso-nas específicas, según se ordenó en el fideicomiso inter - vivos creado previamente. Posteriormente, en la sección 2 del mismo artículo (intitulada Pour-Over to my Living Trust), el testador estableció que todos sus bienes rema-nentes deben ser distribuidos al fideicomiso. Tras evaluar estas disposiciones, los foros recurridos concluyeron que el testamento era una enmienda al fideicomiso inter-vivos, por lo cual la cláusula in terrorem aplicaba a ambos. Erra-ron en su razonamiento.
No hay nada en el testamento que pueda llevarnos a concluir que, en efecto, se trató de una enmienda al fideicomiso. Aquél no contiene una orden expresa para en-mendar el fideicomiso como lo permite la sección 7-1.16 de la Estates, Powers and Trusts Law de Nueva York. NY CLS EPTL Sec. 7-1.16. La referencia que se hace al fideicomiso en la sección 1 del artículo 2 del testamento, tampoco en-mienda el primero. Con dicha expresión, el testador sim-plemente llamó la atención al hecho de que en cuanto a *597 ciertos vehículos de motor localizados en los bienes inmue-bles de Puerto Rico, ya existían reglas para su distribución en el fideicomiso inter-vivos. Podemos deducir que con ello se quiso evitar que se vendieran junto a la propiedad in-mueble en la que se encontraban, mas no se incorporaron disposiciones del fideicomiso en el testamento.
Por otro lado, la sección 2 del testamento es una cláu-sula pour-over. Con ella se transfieren al fideicomiso inter-vivos todos los bienes que pertenecían al Sr. Hart al mo-mento de su muerte, con excepción de los inmuebles sitos en Puerto Rico. Adviértase que se transfieren los bienes pertenecientes al causante, pues son estos sobre los cuales el testador tenía pleno dominio. Así, dichos bienes pasan a ser parte del patrimonio del fideicomiso. Por ello fallan los argumentos de la parte recurrida, en tanto sostiene que el Sr. Hart dejó reglas para disponer de sus bienes al mo-mento de su muerte en el fideicomiso y luego creó reglas especiales en el testamento para algunos de esos bienes. Tal postura obvia principios básicos de la figura del fideicomiso.
Cuando el Sr. Hart —o cualquiera otra persona— aportó bienes al fideicomiso, éstos dejaron de pertenecerle y vinie-ron a ser parte del capital de una entidad separada e inde-pendiente: el fideicomiso. Las normas contenidas en el ins-trumento que creó el fideicomiso regulan la administración y disposición de esos bienes que pertenecen al fideicomiso. Sin embargo, los bienes que no habían sido transferidos al fideicomiso cuando el causante murió, seguían siendo parte del patrimonio del Sr. Hart y, por lo tanto, su distri-bución quedaba sujeta a las normas del testamento. De manera que cada instrumento regula bienes distintos, per-tenecientes a dos sujetos diferentes.
No se trata de que el testamento “extrajo” bienes del fideicomiso para disponer de ellos de una forma especial, como alegan los recurridos. Sino de que los bienes de los cuales dispone el testamento nunca formaron parte del *598 fideicomiso. Es ahora, con la muerte del testador y la eje-cución del testamento, que algunos de los bienes del cau-sante pasarán a ser parte del fideicomiso; este es el pour-over. Entre esos bienes que serán transferidos al fideicomiso a consecuencia del testamento, como vimos, no se encuentran los inmuebles radicados en Puerto Rico.
Es forzoso concluir, entonces, que la relación entre el testamento y el fideicomiso objeto de controversia se limita al común sistema de pour-over de la tradición anglosajona. No se trata de instrumentos “inextricablemente entre-lazados”. Cada uno mantuvo su carácter independiente, no hubo enmiendas ni incorporaciones que los afectaran. Véase R.J. Lynn, Problems with Pour-Over Wills, 47 Ohio St. L.J. 47, 62 (1986) (“When language is free from ambiguity, and is clearly either pour-over language, on the one hand, or incorporating language, on the other, there is no call for construction —the matter is simply one of proper identification of the theory to be applied in the particular case”). Siendo ello así, y ya que la cláusula in terrorem que provocó esta disputa no está incluida en el texto del testa-mento —único recurso del cual debemos derivar la volun-tad del testador— las acciones judiciales entabladas por la peticionaria no la han privado de sus derechos sobre los bienes distribuidos en el testamento del Sr. Hart.
IV
De otra parte, el Tribunal de Apelaciones, siguiendo el razonamiento de que el testamento enmendaba el fideico-miso —y que nuestros tribunales tienen jurisdicción para examinar el testamento porque dispone de inmuebles sitos en Puerto Rico— concluyó que podía interpretar y ejecutar la cláusula in terrorem incluida en el fideicomiso y deter-minar si la peticionaria perdió sus derechos sobre ambos instrumentos. Sin embargo, devolvió el caso al Tribunal de *599 Primera Instancia para que este aplicara el derecho de Nueva York.
Ahora, teniendo en cuenta que, según concluimos, el testamento y el fideicomiso son instrumentos independien-tes, tenemos que determinar si debemos adentrarnos en el análisis de la cláusula in terrorem del fideicomiso. Especí-ficamente, debemos atender el reclamo de la parte peticio-naria de que nuestros tribunales no son el foro adecuado para atender dicha controversia, siendo las cortes del es-tado de Nueva York el mejor foro. Vemos, pues, que se trata de una alegación de forum non conveniens.
A. Recientemente, “para asegurar la organización efi-ciente de los recursos judiciales y para obtener una ‘solu-ción justa, rápida y económica de todo procedimiento’ ”, este Tribunal reconoció “la utilidad de incorporar a nuestra jurisdicción [la doctrina de forum non conveniens] que permit[e] a los jueces rehusar ejercer su jurisdicción en circunstancias excepcionales, a favor de los intereses de las partes y la justicia”. Ramírez Sainz v. S.L.G. Cabanillas, 177 D.P.R. 1, 37 (2009). En dicho caso expusimos que ante una moción de forum non conveniens, el promovente tiene que demostrar que el foro local es claramente inapropiado para atender la controversia y que existe otro foro en otra jurisdicción que también tiene autoridad para entender en la materia y es claramente el más apropiado. Id., pág. 38. Entre los factores que se deben considerar para determi-nar si el foro doméstico es claramente inapropiado, están: la conveniencia para las partes de litigar en la otra juris-dicción; dónde se encuentran las fuentes de prueba y los mecanismos para obtenerlas; si la moción se presenta opor-tunamente; los términos prescriptivos; el reconocimiento de las sentencias y la posibilidad de ejecutarlas en la juris-dicción donde las partes tienen los bienes que podrían ser afectados. Id., págs. 38-39. Véanse, además, referente a la aplicación de la doctrina de forum non conveniens a pleitos sobre fideicomisos: Bogert, supra, Sec. 292, pág. 244; Scott, *600 supra, Sec. 45.2.2.4, pág. 3102 (“It is important to consider not only the relationship, if any, that the forum state has to the trust but also the relationship that one or more other states may have to the trust. It is important also to consider whether a court of another other state has jurisdiction and is already exercising, or would exercise, that jurisdiction. Finally, it is important to consider the precise issue at hand”).
Una vez se demuestra que el foro local es inapropiado, el tribunal debe paralizar los procedimientos y conceder un término razonable al demandante para que presente su acción ante el foro más adecuado. La reclamación ante nuestros tribunales se desestimará si dicho término trans-curre sin que la parte demandante presente su acción en el foro adecuado o, habiendo sido presentada, el foro alterna-tivo asume jurisdicción. No obstante, si el demandante pre-senta su acción dentro del término concedido y el foro ade-cuado declina asumir jurisdicción, el tribunal doméstico original debe continuar con los procedimientos. Ramírez Sainz v. Cabanillas, supra, pág. 38.
B. En el caso de autos, desde la presentación de su reconvención, la peticionaria ha sostenido que las cortes del estado de Nueva York son el foro más apropiado para evaluar la aplicación de la cláusula in terrorem que con-tiene el fideicomiso. Ha reiterado constantemente que to-das las partes del litigio tienen su domicilio y residencia en el estado de Nueva York, que el fideicomiso se creó en dicho estado —donde estaba domiciliado el fideicomitente— y es allí donde radican la mayor parte de los bienes del fideicomiso. Asimismo, señala que el fideicomitente expre-samente seleccionó la ley del estado de Nueva York para regular la validez e interpretación del fideicomiso, que la evidencia relacionada al fideicomiso está en Nueva York, y serán sus cortes las que eventualmente liquidarán dicho fideicomiso ya que allí están domiciliados la mayoría de los beneficiarios. Otro factor importante que debemos conside- *601 rar es que ya existen procedimientos entre las partes rela-cionados al fideicomiso inter-vivos en la Surrogate’s Court de Nueva York.(3)
Ante tales hechos, sobre los cuales no existe controver-sia, es evidente que nuestros tribunales son inadecuados para dilucidar si se ha violado la cláusula in terrorem con-tenida en el fideicomiso. Son las cortes de Nueva York el foro más apropiado para ello, pues todos los vínculos del fideicomiso están radicados en dicha jurisdicción. Aún más, será mucho más conveniente para las partes continuar su litigio en dicho estado por ser el domicilio de todos, contar con todas las fuentes de evidencia, y poder ejecutar en el propio foro la sentencia que allí se emita en su día —sería más oneroso tratar de ejecutar en Nueva York una senten-cia emitida por los Tribunales de Puerto Rico. Téngase en cuenta que es en Nueva York donde está la mayor parte de, si no todos, los bienes del fideicomiso. Por último, debido a que la controversia entre las partes versa mayormente so-bre la interpretación del testamento y el fideicomiso, no han realizado un descubrimiento de prueba sustancial que *602 pudiera perjudicar sus intereses al tener que trasladar el litigio al foro apropiado.
Por todo lo anterior, concluimos que los tribunales de Puerto Rico son claramente inapropiados para evaluar los derechos de las partes bajo el fideicomiso inter-vivos creado por el Sr. Hart. Son las cortes del estado de Nueva York el foro adecuado para dilucidar dicha controversia.
V
Finalmente, se nos requiere que revisemos la imposi-ción de responsabilidad civil extracontractual a la parte peticionaria por los supuestos daños que causaron sus ac-tuaciones durante el presente pleito a los recurridos. Vea-mos el derecho aplicable.
A. Reiteradamente hemos expresado que en nuestra jurisdicción no existe per se la acción civil de daños y per-juicios como resultado de un pleito civil. García v. E.L.A., 163 D.P.R. 800 (2005); Giménez Álvarez v. Silén Maídonado, 131 D.P.R. 91, 96-97 (1992); Commonwealth Loan Corp. v. García, 96 D.P.R. 773 (1968); Berrios v. International Gen. Electric, 88 D.P.R. 109 (1963); Pereira v. Hernández, 83 D.P.R. 160 (1961); Suárez v. Suárez, 47 D.P.R. 97 (1934); López de Tord & Zayas v. Molina, 38 D.P.R. 823 (1928). Solo como excepción a esta norma, hemos recono-cido una causa de acción por persecución maliciosa cuando se presentan hechos extremos en los que se acosa al de-mandante con pleitos injustificados e instados maliciosa-mente. Giménez Alvarez v. Silén Maldonado, supra; Fonseca v. Oyóla, 77 D.P.R. 525 (1954). “Siendo la malicia un elemento esencial de la persecución maliciosa, en nuestro ordenamiento se le cataloga como una acción en daños y perjuicios causados por conducta torticera intencional ....” García v. E.L.A., supra, pág. 810. Sin embargo, como norma general la “ ‘sanción judicial por el uso indebido de *603 los procedimientos legales se traduce en la condena en cos-tas y honorarios de abogado (y cuando proceda, intereses legales por temeridad] dentro del mismo pleito’ (Enfasis en el original.) Giménez Alvarez v. Silén Maldonado, supra, pág. 97, citando a Pereira v. Hernández, 83 D.P.R. 160, 164-165 (1961).
B. En primer lugar, debemos señalar que una lectura comprensiva de la moción de sentencia sumaria presen-tada ante el foro primario por la parte recurrida, no refleja que se solicitara la imposición de responsabilidad civil ex-tracontractual por las actuaciones de la peticionaria. La súplica de la moción solicitó que se “expida una sentencia parcial determinando que María Bonet no tiene derecho alguno a participar en el caudal relicto de Vincent Hart y determine que ha litigado este caso con temeridad”. Apén-dice del Recurso de certiorari, pág. 261. Solo podríamos inferir un reclamo de daños y perjuicios de una sucinta expresión contenida en la aplicación del derecho sobre los efectos de la cláusula in terrorem, donde se expuso que se debía resolver que la Sra. Bonet “tiene la obligación de compensar los beneficiarios restantes por los daños causa-dos por sus actuaciones”. Id., pág. 257. No obstante, aún si consideráramos que, en efecto, se presentó un reclamo de daños y perjuicios, veremos que el mismo no procede.
El Tribunal de Primera Instancia determinó que proce-día una acción de daños y perjuicios porque la peticionaria actuó de forma temeraria al instar una demanda frívola sobre división de comunidad de bienes. Igualmente, el Tribunal de Apelaciones concluyó que la demanda original de la peticionaria no tenía méritos y que por haberse negado a vender las propiedades sitas en Puerto Rico, los recurridos tuvieron que pagar las contribuciones de los inmuebles con penalidades por retrasos. Por ello, y porque la peticionaria presentó otras acciones en las cortes de Nueva York y Puerto Rico, el foro apelativo intermedio confirmó la deter-minación de responsabilidad civil extracontractual.
*604 Los hechos descritos por los foros recurridos no dan paso a una causa de acción por daños y perjuicios. Las contribu-ciones que pagaron los recurridos no son producto del pre-sente litigio, son una obligación que emana de la ley. Asi-mismo, los intereses acumulados por el retraso en el pago de las contribuciones pudieron haberse evitado si se hu-biera satisfecho la deuda contributiva a tiempo. La misma no se tenía que pagar, necesariamente, con el dinero que produjera la venta de los inmuebles. No podemos concluir que la negativa de la parte peticionaria a vender los in-muebles radicados en Puerto Rico, mientras reclamaba te-ner derecho a la mitad de ellos, constituyera un acto mali-cioso que originara una obligación civil extracontractual.
Igual razonamiento se impone ante las alegaciones de que la peticionaria ha comenzado otros procesos judiciales en Nueva York y en Puerto Rico. Por ejemplo, los foros recurridos llaman la atención al hecho de que la peticiona-ria presentó otra acción(4) en nuestros tribunales para ata-car la validez del exequátur con el cual se había hecho efectivo en Puerto Rico el testamento del Sr. Hart.(5) Sin embargo, en este último caso el foro primario determinó dejar sin efecto el exequátur que se realizara previamente, pues no se notificó el procedimiento a todas las partes interesadas. El Tribunal de Apelaciones confirmó dicha sentencia. (6)
Ya hemos expresado que proseguir un pleito civil contra un demandado, como norma general, no produce una ac-ción de daños. En este caso no encontramos razones para apartarnos de dicha norma. No estamos ante una conducta extrema de acoso malicioso a través del foro judicial. Más bien, podría concluirse —como en efecto hizo el Tribunal de *605 Primera Instancia— que la parte peticionaria incurrió en conducta temeraria mientras litigó este pleito. Siendo la imposición de temeridad una determinación discrecional del foro primario, y como la peticionaria no la impugnó ante nosotros, no debemos intervenir con la misma. Sin embargo, no procede imponer responsabilidad por daños y perjuicios contra la parte peticionaria.
Por todo ello, estimo necesario dictar una sentencia para revocar el dictamen del Tribunal de Apelaciones, con-ceder un término a la parte recurrida para que presente su acción en el estado de Nueva York y devolver el caso al foro primario para que imponga honorarios de abogado a la parte peticionaria.

 A diferencia de los fideicomisos conocidos como “testamentary trusts”, los cuales quedan formalmente establecidos al momento de la muerte del fideicomitente, los fideicomisos inter vivos o living trusts se crean durante la vida del fideicomitente.

 Aunque en la demanda la señora María L. Bonet brindó una dirección resi-dencial y postal de Puerto Rico, ambas partes están contestes en que la demandante tiene su domicilio en el estado de Nueva York, y es allí donde reside.

 Las Surrogate’s Courts del estado de Nueva York gozan de amplia jurisdic-ción para entender en asuntos de sucesiones y liquidación de fideicomisos, entre otros.

“See. 201. General jurisdiction of the surrogate’s court

“3. The court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.

“Sec. 207. Lifetime trusts; jurisdiction and venue

“1. The surrogate’s court of any county has jurisdiction over the estate of any lifetime trust which has assets in the state, or of which the grantor was a domiciliary of the state at the time of the commencement of a proceeding concerning the trust, or of which a trustee then acting resides in the state or, if other than a natural person, has its principal office in the state.” 58A McKinney’s Consolidated Laws of New York Annotated Secs. 201-207, págs. 48-159 (1994). Véase N.Y. C.L.S. S.C.P.A. Secs. 200, 207.

6) María L. Bonet v. Thomas Holahan, et ais., Caso Civil Núm. KAC 2008-1037.

 Ex parte Thomas Holahan, Caso Civil Núm. KJV 2007-1471.

 María L. Bonet v. Thomas Holahan, et ais., Caso Civil Núm. KLAN 2010-00287.